UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BofI HOLDING, INC. SECURITIES LITIGATION., | Case No.: 3:15-CV-02324-GPC-KSC<br><br>**ORDER:**<br><br>**REVERSING IN PART THE MAGISTRATE JUDGE'S ORDER GRANTING MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>**[Dkt. No. 49]** |

Before the Court are Defendants' Objections, Dkt. No. 52, to Magistrate Judge Karen Crawford's August 26, 2016 order (the "August 26 Order" or "the Order"), Dkt. No. 49, granting the parties' joint motion for determination of discovery dispute ("the Joint Motion"), Dkt. No. 39. In the August 26 Order, the magistrate judge granted Lead Plaintiff's request to issue a protective order pursuant to Federal Rule of Civil Procedure ("Rule") 26(c). Defendants timely objected to the Order on September 9, 2016. Dkt. No. 52. Defendants' objections have been fully briefed. Lead Plaintiff Houston

Municipal Employees Pension System filed an opposition to Defendants' objections on October 7, 2016, Dkt. No. 68, and Defendants filed a tardy reply[1] on October 28, 2016. Dkt. No. 74. On September 28, 2016, the Court denied Defendants' *ex parte* motion to shorten time for hearing its objections to the magistrate's Order. Dkt. No. 67. On November 1, 2016, Lead Plaintiff filed an *ex parte* motion for leave to file a sur-reply to respond to new argument in Defendants' reply. Dkt. No. 75-1.

Upon consideration of the moving papers and the applicable law, and for the reasons set forth below, the Court **REVERSES in part** the magistrate judge's August 26 Order and **DENIES** Plaintiff's *ex parte* motion to file a sur-reply as moot.

## BACKGROUND

The current dispute arises from Lead Plaintiff's reliance on confidential witness allegations in its Consolidated Amended Class Action Complaint ("CAC").[2] Dkt. No. 26. The CAC incorporated the allegations of eleven confidential witnesses, all of whom were former BofI employees. Dkt. 68 at 5.[3] Although the CAC did not identify the confidential witnesses by name, the CAC provided details about the confidential witnesses' job titles and responsibilities in order to comply with the PSLRA and *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009). *See generally* CAC.

Soon after filing the CAC, Lead Plaintiff alleges that it began to receive reports that Defendants' counsel had made contact with, and left messages for, some of the confidential witnesses. Dkt. No. 68 at 5. One of the voicemails, Lead Plaintiff avers,

---

[1] The Court's briefing schedule specified that Defendant was to file a reply "on or before October 21, 2016." Dkt. No. 54.

[2] Ever since Congress passed the Private Securities Litigation Reform Act of 1995 (PSLRA), the use of confidential witnesses in class action securities litigation has become ubiquitous. *See, e.g.*, Gideon Mark, Confidential Witnesses in Securities Litigation, 36 J. Corp. L. 551, 552-54 (2011) (noting that the PSLRA's strict pleading requirements and mandatory stay of discovery during the pendency of a motion to dismiss have propelled dependence on confidential witnesses). Confidential witnesses are typically current or former employees of the securities defendant who, out of fear of retaliation, lend support to plaintiff's pleadings on the condition that their identities remain anonymous. *Id.* at 554-55.

[3] Page numbers refer to the internal pagination provided by CM/ECF.

stated that the recipient had been "named as a witness" in the CAC and that Defendants' counsel wished to speak with them "informally" in order to "investigate" the claims made. *Id.* at 5-6. Another began by saying that "as you know, your name's come up because of the complaint," and went on to say that Defendants' counsel "now need[s] to do an investigation based upon your allegations." *Id.* at 6. Thereafter, Plaintiff's counsel contacted Defendants' counsel to express their concern that Defendants were "seeking to intimidate or coerce former employees into speaking with Defendants' counsel by suggesting their identities had already been disclosed," and to communicate their position that the identities of the confidential witnesses "constitute[d] attorney work product, and that Defendants' attempt to contact the former BofI employees was an improper attempt to obtain Plaintiff's work product." *Id.* at 6. Because the parties were unable to reach an agreement concerning the proper scope of Defendants' investigation of the confidential witnesses, the parties submitted the Joint Motion to the magistrate judge in order to resolve their dispute. *Id.*

In the Joint Motion, Lead Plaintiff moved for a protective order pursuant to Rule 26(c) for the specific purpose of "curb[ing] Defendants' pre-discovery efforts to mislead or intimidate former BofI employees into divulging their possible roles as CWs [confidential witnesses] in this case and/or revealing Lead Counsel's work product before the Court can appropriately consider the arguments . . . against such disclosure." Dkt. No. 39 at 14 (emphasis removed). Specifically, Lead Plaintiff sought to prohibit Defendants "from contacting or attempting to contact, until further order of the Court, any former BofI employees for the purpose of ascertaining whether they provided information in this action to Lead Plaintiff's Counsel as confidential witnesses." Dkt. No. 49 at 1. In support of their request for a protective order, Lead Plaintiff argued: (1) that the allegations attributed to the confidential witnesses were not the proper subject of

dispute on a motion to dismiss[4]; (2) that Defendants' investigation of the confidential witnesses' claims improperly encroached upon Lead Plaintiff's attorney work product; and (3) that public policy weighed in favor of keeping the identities of the confidential witnesses private to prevent against harassment. Dkt. No. 39 at 14-20. Lead Plaintiff's counsel further suggested that issuing a protective order was, moreover, appropriate given that Defendants' informal investigation of the confidential witnesses was improper in light of the PSLRA's mandatory stay on discovery.[5] *Id.* at 15.

Defendants, in turn, offered four main arguments against issuing the protective order: (1) Lead Plaintiff lacked standing to request a protective order under Rule 26(c) because Defendants had not sought discovery and because Lead Plaintiff was not a "party or person from whom discovery [wa]s sought"; (2) Lead Plaintiff had failed to establish "good cause" for the issuance of the order because their argument was based on hearsay and speculation; (3) BofI had not improperly obtained Lead Plaintiff's work product; and (4) BofI's informal investigations were proper because they were not seeking any formal discovery. *Id.* at 21-33. Defendants' argument also accused Lead Plaintiff's proposed protective order of being akin to an "injunction" or "gag order." *See id.* at 33.

On August 26, 2016, Magistrate Judge Crawford issued the requested protective order under the authority of Rule 26(c). Dkt. No. 49. The magistrate judge concluded that (1) Lead Plaintiff had standing to seek a protective order for the benefit of third parties (i.e., the confidential witnesses); (2) that the potential disclosure of attorney work product "provide[d] plaintiff . . . with standing to seek a protective order under Rule 26(c)"; and (3) that Lead Plaintiff had established good cause for the issuance of the

---

[4] This argument is moot as the Court has already ruled on Defendants' motion to dismiss. Dkt. No. 64.
[5] The PSLRA provides for a mandatory stay of discovery for the duration of a pending motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.")

order. *See id.* at 3. The August 26 Order made a point to emphasize that it was particularly concerned with the language Defendants had used to contact the confidential witnesses. *See id.* at 4 ("The limited evidence provided to the Court . . . portrays an effort to mislead witnesses, potentially under false pretenses, into cooperating with the defendants."). Coupling that concern with the "potential for disclosure of attorney work product," the magistrate judge concluded that Lead Plaintiff's showing had "clearly crosse[d] the good cause threshold." *Id.* The magistrate judge then engaged in a balancing analysis weighing the risk of "annoyance, embarrassment, oppression, or undue burden or expense" to Lead Plaintiff against Defendants' needs to "conduct an investigation and prepare defenses," and found that the analysis tipped in favor of Lead Plaintiff because of the current stay on discovery and the fact that a Rule 16(f) Case Management Conference had not yet occurred. *Id.* at 4-5. Accordingly, the magistrate judge issued the Rule 26(c) protective order and prohibited Defendants from contacting "any former BofI employees for any purpose related to this litigation" until the magistrate judge revisited the issue at the case management conference. *Id.* at 5.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(a), aggrieved parties may file objections to the rulings of a magistrate judge in non-dispositive matters within fourteen days. Fed. R. Civ. P. 72(a). In reviewing a magistrate judge's order, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002). Under the "clearly erroneous standard," a court should overturn a magistrate judge's ruling when it is "left with the definite and firm conviction that a mistake has been committed." *See Concrete Pipe & Prods. of Cal., Inc. v. Constrs. Laborers Pension Trust*, 508 U.S. 602, 622 (1993). A magistrate judge's legal conclusions as to non-dispositive matters are reviewable for clear error. *Grimes v. City &*

*Cnty. of San Francisco*, 951 F.2d 236, 240-41 (9th Cir. 1991) (citing *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 747-48 (9th Cir. 1990)).

## DISCUSSION

Defendants challenge the protective order as: (1) contrary to law because it is not supported by admissible evidence; (2) clearly erroneous because the statements made by defense counsel were not false and misleading; and (3) "prohibitively broad in scope, having the potential to prejudice BofI in this and other litigation." Dkt. No. 52-1 at 2. Defendants argue that the August 26 Order is prohibitively broad in scope because, among other reasons, it seeks to regulate Defendants' informal investigations. *See id.* at 10-11. Relying on the Advisory Committee Notes to Rule 26(d), Defendants assert that their reliance on informal investigations is distinct from the formal discovery that occurs under Rule 26 and, therefore, proper. *See id.* at 11 ("in the Note to Rule 26(d), the Committee observed that "[t]his subdivision is revised to provide that formal discovery — as distinguished from interviews of potential witnesses and other informal discovery — not commence until the parties have met and conferred as required by subdivision (f).")

As an initial matter, the Court agrees with Defendants that their informal investigations do not fall within the scope of formal discovery regulated by Rule 26. In the Joint Motion, Lead Plaintiff made clear that it sought "to curb Defendants' pre-discovery efforts" to mislead confidential witnesses into cooperating with defense counsel and into revealing attorney work product. Dkt. No. 39 at 14. Lead Plaintiff, however, cites to no authority indicating that the Court has the power to issue protective orders prohibiting informal investigations conducted before discovery has commenced. As Lead Plaintiff indicated in its request for a protective order, *see* Dkt. No. 39 at 3, and as the magistrate judge acknowledged in its August 26 Order, *see* Dkt. No. 49 at 5, discovery has not yet begun in this case. *See generally* Fed. R. Civ. P 26(d) ("Timing. A party may not seek discovery from any source before the parties have conferred as

required by Rule 26(f)"). The Court knows of no authority that would permit it to enter a Rule 26(c) protective order before discovery has begun. Moreover, the magistrate judge cited to no such authority — or alternate authority — in issuing the requested protective order. *See generally* Dkt. No. 49.

Rule 26 is entitled "Duty to Disclose; General Provisions Governing Discovery." Fed. R. Civ. P. 26. Rule 26(c) addresses "Protective Orders" and states that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . ." Fed. R. Civ. P. 26(c). The plain language of Rule 26(c) does not provide authority for a protective order over prediscovery, informal investigations. Accordingly, the magistrate judge clearly erred by granting Lead Plaintiff's request for a protective order under Rule 26(c).

Yet even if the magistrate judge had the authority to issue a protective order regulating pre-discovery, informal investigations under Rule 26(c), the Court further concludes that the magistrate judge's decision was "contrary to law" on the merits.

A party may demonstrate the "good cause" required for issuance of a protective order by demonstrating that harm or prejudice will result from discovery. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Any protective order that is issued must be narrowly tailored and cannot be overbroad. *Ramirez v. Cnty. of Los Angeles*, 231 F.R.D. 407, 412 (C.D. Cal. 2005).

The magistrate judge found good cause to issue the Rule 26(c) protective order based upon (1) Defendants' attempts to mislead confidential witnesses into cooperating with the Defendants and (2) the potential for disclosure of attorney work product. Dkt. No. 49 at 4. The magistrate judge was particularly concerned by the language that defense counsel used to communicate with the confidential witnesses via voicemail. *Id.*

("Gleaning the identities of the CWs from the complaint is not the issue. Rather, it is the language defense counsel chose in communicating with potential witnesses that is questionable."). In fact, the magistrate judge indicated that the content of the voicemails alone was enough to justify issuance of the protective order. *Id.* Then, "[w]hen combined with the potential for disclosure of attorney work product," the magistrate added, Defendant's communications with confidential witnesses "clearly crosse[d] the good cause threshold." *Id.*

The Court concludes that the order was contrary to law because it was overbroad and not narrowly tailored. The concerns articulated by the magistrate judge combined with Lead Plaintiff's showing of prejudice and harm did not warrant the breadth of the protective order sought and granted.

In the Joint Motion, Lead Plaintiff expressed a number of legitimate concerns about Defendants' attempts to contact confidential witnesses. At the center of those concerns was the fact that Defendants had left certain individuals voicemails indicating that their "name[s] had come up" as a result of the CAC and that defense counsel wished to discuss the allegations attributed to them. Dkt. No. 39 at 14. As Lead Plaintiff rightly points out, such statements were misleading because the CAC had not referred to any former BofI employees by name. Lead Plaintiff also expressed concern that Defendants' attempts to interview confidential witnesses might lead to the invasion of Lead Plaintiff's attorney work product. *Id.* at 18. ("CWs who have been misled by Defendants into believing that their identities already have been disclosed may believe they have no choice but to answer Defendants' "informal" requests to discuss what they may have discussed with Lead Counsel, or share their written communications with Lead Counsel.") Buttressing this unease was the fact that defense counsel had allegedly refused to say, in a conference held on May 12, 2016 "whether they [defense counsel] had requested written communications with Lead Counsel . . . from such former BofI employees, and refused to refrain from asking former BofI employees to voluntarily

provide such written communications in the future." *Id.* In fact, defense counsel all but confirmed Lead Plaintiff's suspicion when it argued in the Joint Motion that: "ex-employees of BofI were under no legal or contractual obligation to hold Lead Plaintiff's work product confidential . . . [because w]hether or not communications between Lead Plaintiff's counsel and a CW or other materials provided by Lead Plaintiff's counsel to a CW are work product is simply not the issue here." *Id.* at 24. Finally, the last prejudice or harm that Lead Plaintiff identified was the confidential witnesses' "legitimate fear of retaliation" that may result if his or her identity were not protected. Dkt. No. 39 at 19.

Militating against these three legitimate concerns, however, were a number of other factors that should have been given more weight in crafting a final protective order.

For one, at the May 12 conference, identified above, Defendants agreed to stop telling "former BofI employees that their names have been disclosed in the Amended Complaint." *Id.* at 18. That Defendants had assured the magistrate judge and Lead Plaintiff that it would refrain from using the language that precipitated the instant discovery dispute, minimized the need for a protective order.

Second, Defendants are not seeking to compel Lead Plaintiff to disclose the identities of the confidential witnesses, as was the case in all of the cases that Lead Plaintiff has cited. *See, e.g.*, *In re Ashworth, Inc. Sec. Litig.*, 213 F.R.D. 385, 386-87 (defendants moved to compel further responses by plaintiff as to special interrogatories that inquired about confidential witnesses, and plaintiffs objected based on the attorney work product doctrine); *In re MTI Tech. Corp. Sec. Litig. II*, 2002 WL 32344347, at *1 (C.D. Cal. June 13, 2002) (defendants brought motion to compel identification of confidential witnesses, plaintiffs claimed work product rule in defense); *Tierno v. Rite Aid Corp.*, 2008 WL 2705089, *3 (N.D. Cal. 2008) (denying defendants' objection that magistrate erred in denying request for production of names of confidential witnesses who provided evidence to support complaint); *cf. Hernandez v. Best Buy Co., Inc.*, 2014 WL 5454505, *4 (S.D. Cal. 2014) (denying plaintiff's request for an order compelling

defendant to provide a further response to an interrogatory because defendant claimed that identity of individual was protected by work product doctrine); *Gen-Probe Inc. v. Becton, Dickinson & Co.*, 2011 WL 997189, *1-3 (S.D. Cal. 2011) (denying, in patent dispute, plaintiff's request that defendant supplement its response to an interrogatory to include contact information for witnesses identified in preliminary invalidity contentions on grounds that identities were protected by work-product doctrine).

Here, Defendants have not asked Plaintiff to reveal the identities of its confidential witnesses. Rather, Defendants figured out the identities of the confidential witnesses for themselves. This fact is salient because "as a general proposition . . . no party has anything resembling a proprietary right to any witnesses' evidence . . . [a]bsent a privilege." *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C. 1983); *cf. Gen-Probe Inc.*, 2011 WL 997189 at *3 (denying defendant's request to compel identities of witnesses because they had not established "undue hardship in discovering the information for itself"); *In re MTI*, 2002 WL 32344347 at *5 (citing *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972) for proposition that "although defendant's counsel may ultimately obtain the same information from the former employees without disclosure, including whether they have spoken to plaintiff's counsel, whether the witness is . . . . "). Further, Lead Plaintiff has not presented the Court with any case that supports their contention that the work product doctrine shields witnesses from being contacted by a party after that party discovers the identity of the witnesses by their own efforts. Accordingly, Lead Plaintiff's argument in support of the protective order does not stand on the firm ground that it asserts.

Third, Lead Plaintiff's argument that the confidential witnesses harbor a "legitimate fear of retaliation" is not supported by specific "reliable, non-conclusory" evidence. *See Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbiton, Inc.*, 278 F.R.D. 335, 344 (S.D.N.Y. 2011). In the Joint Motion, Lead Plaintiff argues that public policy concerns weigh in favor of protecting the identities of

confidential witnesses from disclosure and, therefore, further justify a protective order. Dkt. No. 39 at 18.  Such concerns, Lead Plaintiff contends, apply with great force in this case because "the CWs repeatedly and uniformly reported that a fear-based culture pervaded BofI," because "CWs reported that such threats follow employees even after they have left the Company," and because "one CW was just recently accused and brought up on criminal charges for conduct that allegedly took place while employed at BofI, even though the CW left BofI's employment nearly three years ago." *Id.* at 19. While these general concerns of retaliation are entitled to some weight, Lead Plaintiff has not produced any particularized facts demonstrating that any confidential witness faces a credible risk of retaliation so as to justify the total prohibition on contacting former BofI employees. *Cf. Plumbers & Pipefitters*, 278 F.R.D. at 344 (denying plaintiff's request to maintain confidentiality of witnesses based on risk of retaliation, but allowing plaintiff's counsel to produce evidence, via an *ex parte* affidavit, to "substantiate the concern that disclosure of a particular CI's [confidential informant] name would result in retribution.").

     Given the factual and legal deficits in Lead Plaintiff's various arguments, the protective order that prevented Defendants from contacting any former employee for any purpose related to this litigation was overbroad.  The Court recognizes the legitimate needs of defendants to conduct investigations in order to prepare their defense. *See, e.g.*, *Wharton v. Calderon*, 127 F.3d 1201, 1204 (9th Cir. 1997) (observing that a party's right to interview witnesses is a "valuable right" as it is a primary investigative technique). Here, Defendants' right to conduct investigations has been all but suspended until discovery formally beings. *See* Dkt. 39 at 5 ("The Court [i.e., the magistrate judge] intends to revisit this issue [the protective order] at the Case Management Conference."). Such a drastic prohibition was not appropriate in light of the relative strength of Lead Plaintiff's arguments.  Accordingly, the Court concludes that the protective order was contrary to law because it was overbroad and not narrowly tailored.

That the Court has found that the magistrate judge's protective order was overbroad does not, however, diminish, in the eyes of the Court, the valid concerns presented by Lead Plaintiff.  Defendants' language in communicating with the confidential witnesses, suggesting that they had been "named" in the complaint, had and has the potential to mar the credibility of Lead Plaintiff's counsel in the eyes of the witnesses, to influence them so as to not cooperate with Lead Plaintiff moving forward, or even to pressure confidential witnesses to give untruthful statements.  Further, if Defendants were to interview confidential witnesses relied upon by Lead Plaintiff in the complaint, and to ask questions regarding the witnesses' interactions or communications with Lead Plaintiff, that conduct would raise serious concerns about the exposure of Lead Plaintiff's attorney work product.

Accordingly, although the Court finds that the protective order issued by the magistrate judge was contrary to law as overbroad, the Court nonetheless finds that Defendants' conduct warrants a more narrowly tailored protective order issued pursuant to the Court's inherent authority to regulate the conduct of attorneys appearing before it. *See Wharton*, 127 F.3d at 1205-06 (reviewing district court's issuance of a protective order pursuant to the trial court's inherent authority and reviewing for abuse of discretion); *see also Gomez v. Vernon*, 255 F.3d 1188, 1134 (9th Cir. 2001) (addressing the court's inherent authority to issue sanctions).

As such, given the ongoing discovery dispute concerning Defendants' informal investigations of confidential witnesses, and taking into account Defendant's interest in conducting investigations before the initiation of discovery, Lead Plaintiff's interest in protecting its attorney work product, and the public's interest in preventing retaliation against confidential witnesses, the Court issues the following protective order.

> Defendants, their attorneys, agents or representatives may contact and interview former BofI employees for purposes of the informal investigation of the litigation pending before this Court. In the event that the former employees are willing to speak with the defense, Defendants are prohibited, during such interviews, from: (1) telling such former BofI employees that they have been "named in the

complaint" or otherwise identified by the Plaintiffs in any pleading; (2) seeking to obtain Lead Plaintiff's attorney work product from such former employees; and/or (3) publicly disclosing the identities of such former employees as confidential witnesses.

In the event that Defendants intentionally violate any of these prohibitions and upon evidence of such violations being filed under seal with the Court, the Court will consider further orders and sanctions including contempt of court proceedings.

## CONCLUSION

For the reasons set forth above, the Court **REVERSES in part** the magistrate judge's August 26 Order granting Lead Plaintiff's request for a Rule 26(c) protective order. The Court further **ORDERS** that Defendants abide by the amended protective order, issued pursuant to the Court's inherent authority, as stated above. The Court further **DENIES** as moot Plaintiff's *ex parte* motion for leave to file a sur-reply. Because the Court did not rely on the purportedly new argument presented in Defendants' reply brief, *see* Dkt. No. 75-1 at 2 (identifying Defendants' references to "documents voluntarily provided by a former BofI employee to Lead Plaintiff" as new argument), a sur-reply was not warranted.

**IT IS SO ORDERED.**

Dated:  November 30, 2016

Hon. Gonzalo P. Curiel
United States District Judge