Richard M. Heimann (State Bar No. 063607)
rheimann@lchb.com
Joy A. Kruse (State Bar No. 142799)
jakruse@lchb.com
Katherine C. Lubin (State Bar No. 259826)
klubin@lchb.com
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Counsel for Lead Plaintiff Houston Municipal Employees*
*Pension System and Lead Counsel for the Proposed Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br><br>BofI HOLDING, INC. SECURITIES LITIGATION. | Case No.  3:15-cv-02324-GPC-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 2**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>JUDGE: Gonzalo P. Curiel<br>CTRM:  2D-2d Floor – Schwartz<br><br>MAGISTRATE JUDGE: Karen S. Crawford<br>CTRM:  10th Floor (Carter/Keep) |

REDACTED

1335027.4

Lead Plaintiff Houston Municipal Employees Pension System ("HMEPS" or "Plaintiff") and Defendants BofI Holding, Inc. ("BofI" or the "Company"), Gregory Garrabrants, Andrew J. Micheletti, Paul J. Grinberg, Nicholas A. Mosich, and James S. Argalas (collectively, "Defendants") submit the following joint motion for determination of Discovery Dispute No. 2 regarding Plaintiff's request to permit its review and use of documents produced by a former BofI employee to Plaintiff. The parties certify that on December 5 and 8, 2016 they met and conferred in accordance with Rule V.B. of Magistrate Judge Karen Crawford's Civil Rules to resolve this issue, but reached an impasse.

## I.    INTRODUCTION

### A.    Plaintiff's Introduction

Although Defendants' motion to dismiss the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint" or "Am. Compl.") was partially denied, formal discovery has not yet commenced in this action.[1] In the meantime, Plaintiff's informal investigation in this case has included interviews with numerous former BofI employees, eleven (11) of whom were cited as confidential witnesses ("CWs") in the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint" or "Am. Compl.") filed on April 11, 2016.

As part of Plaintiff's informal investigation, one former BofI employee voluntarily provided Plaintiff's investigator with a roughly four to six-inch stack of documents concerning that former employee's prior employment at BofI. No confidentiality agreement was contained in those documents. Apart from that fact, as further discussed below, Plaintiff and its counsel (Lieff Cabraser Heimann & Bernstein, LLP ("Lead Counsel" or "LCHB")), have taken great care to remain

---

[1] Under this Court's procedures, discovery will commence after the parties have attended an Early Neutral Evaluation ("ENE") conference, whereupon a Rule 26(f) conference will be scheduled. The ENE conference originally scheduled for December 14, 2016 in this action was postponed due to the filing of the Second Amended Class Action Complaint on November 25, 2016 [Dkt. No. 79].

1    unaware of the specific contents of the materials provided by this former BofI

2    employee.

3         The parties are now at impasse over whether Lead Counsel may review and

4    use these voluntarily provided documents, outside and independent of formal

5    discovery, in furtherance of Plaintiff's independent investigation.  Under directly

6    applicable precedent in this Circuit, Plaintiff believes that the appropriate course is

7    for Defendants to review and redact any information they believe to be attorney-

8    client privileged, and for the materials to otherwise be made available for review by

9    Plaintiff, subject to a mutually acceptable and/or Court-endorsed Protective Order

10   to protect any appropriately-designated "Confidential" information (including trade

11   secret, competitively sensitive, or otherwise confidential business information)

12   from dissemination or use outside of this litigation. If necessary, private personal

13   identifying information of BofI customers (as discussed below) may be redacted as

14   well.

15        Defendants disagree.  Initially, they demanded the immediate destruction of

16   these documents in their entirety, citing a "Confidentiality Agreement" purportedly

17   signed by the former BofI employee during that person's employment.  *See*

18   Declaration of Daniel P. Chiplock in Support of the Joint Motion for Determination

19   of Discovery Dispute No. 2 ("Chiplock Decl." or "Chiplock Declaration"), ¶ 8.

20   Subsequently, Defendants proposed that questions concerning the production of

21   these documents be postponed until discovery commences, so that (among other

22   things) Defendants can interpose "relevance" objections to some or all of the

23   documents (to date, Defendants have previously stated they believe *all* of the

24   documents to be "irrelevant" to this litigation).  *Id.*, ¶¶ 8, 11.

25        Defendants are wrong.  *First*, as discussed further herein and explained by

26   directly applicable precedent, employee confidentiality agreements are neither

27   designed nor intended to prevent the disclosure of information concerning possible

28   securities fraud, nor to deter whistleblowing activity.  Instead, such confidentiality

1  agreements are designed primarily to prevent the uncontrolled dissemination of

2  trade secret or otherwise sensitive business information to competitors or the

3  marketplace.  By allowing the voluntarily documents to be produced and utilized

4  subject to a Protective Order[2], which by its operation would limit any

5  "Confidential" information to disclosure only to certain parties and only for

6  purposes of this litigation, Defendants' competitively-sensitive or otherwise

7  confidential business information, as well as any private customer data, will be

8  protected.  Such is the law in this jurisdiction, as exemplified by the closely

9  analogous authorities Plaintiff cites herein, as well as the Model Protective Order

10  for this District (from which the attached proposed Protective Order has been

11  adapted).

12      *Second*, it is not for Defendants to determine what information is or is not

13  "relevant" to Plaintiff's independent investigation, and to refuse to permit

14  Plaintiff's review of the documents based on their "relevance."  The materials at

15  issue here were produced voluntarily by a former employee, not in response to a

16  subpoena or document request to Defendants or any third party.  There is literally

17  no burden on Defendants presented by the production of these documents.  Further,

18  the law is clear that parties have latitude to pursue their own informal investigations

19  prior to the commencement of discovery, and to obtain and use voluntarily

20  produced information to develop their cases or defenses beyond the formal confines

21  of Fed. R. Civ. P. 26.  Judge Curiel himself held as much in his recent Order in this

22  litigation dated November 30, 2016.  Dkt. No. 80 at 6.  For these reasons and those

23  further explained below, Plaintiff's requested relief should be granted.

24      **B.   Defendants' Introduction**

25      Plaintiff fundamentally misconstrues what is at stake in this Joint Motion.

26

_____

27  [2] A proposed form of Protective Order, closely patterned after the Model Protective
Order under [the] Civil Local Rules for the Southern District of California, is being

28  submitted directly to the Court by email, as required under the local rules and this
Court's individual civil practices.

Defendants and plaintiff agree that parties are entitled to conduct "informal investigations" into the claims and defenses asserted in litigation. Indeed, as conceded by plaintiff, it has already conducted such an investigation and obtained the alleged statements of eleven purported former employees of BofI, identified as Confidential Witnesses ("CWs") in the Second Amended Class Action Complaint ("SAC"). Thus, plaintiff's ability to investigate its claims is not at stake.

What is at stake is whether a former ████████ at BofI (████████) can steal the private financial information of BofI and its customers and then disseminate that information to plaintiff and its counsel. Defendants submit that the Court should send a clear message discouraging such conduct: ████████ theft and disclosure of the private financial information of third parties was unquestionably wrongful. Moreover, LCHB's failure to employ appropriate safeguards to prevent the disclosure of such information during its "investigations" of *a bank*, despite defendants' advance warnings, was reckless.

That ████████ theft and disclosure of BofI's documents was wrongful cannot seriously be questioned. ████████ was subject to three separate confidentiality agreements in favor of BofI, all of which expressly prohibited ███ from improperly using and disclosing the private financial information of BofI's customers and/or the bank's internal documents. Even if the Court looks past ███ ████████ contractual promises, ███ was also required to follow various federal and state laws that protect the financial privacy of BofI's banking customers, including the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801, *et seq.* ("GLBA"), and the California Financial Information Privacy Act, Cal. Fin. Code §§ 4050, *et seq.* ("CFIPA"). Plaintiff's efforts to obtain banking documents through informal channels present a serious risk to financial privacy and to the integrity of the banking sector.

The Constitutional right to financial privacy of BofI's customers outweighs any policy reasons supporting a securities plaintiff's informal investigations.

Indeed, where (as is the case here) all of the documents significantly pre-date the putative Class Period and are irrelevant to the issues alleged in the SAC, there is no basis for undermining BofI's contractual confidentiality rights or weakening the protections afforded to the private financial information of non-parties to this action.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Statement of Relevant Facts

Among the "copious facts" favorably cited by the Court in its order partially denying Defendants' motion to dismiss are numerous allegations based on testimony provided to Plaintiff by former BofI employees acting as CWs, with respect to which the Court found "no reliability issue." *See* Order: Denying in Part and Granting in Part Defendants' Motion to Dismiss ("MTD Order"), Dkt. No. 64, at 4, 17-19, 23-25.

The documents at issue in this motion were voluntarily provided, during the course of Plaintiff's informal investigation, by one former BofI employee, from that former employee's home files, to an investigator employed by Lead Counsel. Chiplock Decl., ¶ 2.  Lead Counsel did not "induce" the former BofI employee in question to produce the documents, nor was it indicated at the time to Lead Counsel that the former employee in question—who left BofI more than three years ago— was precluded by any judicially enforceable confidentiality agreement from sharing the documents (some of which may have included the employee's own personal notes and materials).  *Id.*, ¶ 3.[3]  No such putative agreement was included in the documents that the former BofI employee voluntarily provided.  *Id.*

---

[3] On March 4, 2016, prior to the filing of the Amended Complaint, Defendants' counsel sent a letter directly to Lead Counsel's investigator threatening legal action against him, in which Defendants' counsel falsely alleged that the investigator had "defamed BofI" and encouraged former BofI employees to violate their putative "contractual and federal regulatory" obligations by disclosing information concerning internal BofI business.  *Id.*, ¶ 4.  Lead Counsel, in a written reply, asked Defendants to specifically identify any former BofI employees whom Defendants believed were barred from voluntarily sharing information concerning BofI with Plaintiff pursuant to any legally enforceable confidentiality agreements, and to

1    The documents have not been reviewed by any attorneys or staff of Lead

2    Counsel other than a single contract attorney who reviewed the documents solely to

3    ascertain whether any may raise possible privilege or confidentiality concerns. *Id.*,

4    ¶ 5.[4]  Once it was determined that at least some of the documents could potentially

5    raise privilege or confidentiality/privacy concerns, the documents were quarantined

6    and the reviewing contract attorney was immediately screened from the litigation

7    and all attorneys and staff working on it, for all purposes. *Id.*  The documents were

8    then shipped to outside counsel specializing in legal ethics, Merri A. Baldwin of

9    Rogers Joseph O'Donnell, who contacted Defendants' counsel to request that they

10   review a copy set of the Documents for privilege or necessary redactions and to

11   provide a log of same before Lead Counsel proceeded with any substantive review.

12   *Id.*, ¶¶ 5-6 (*see* Letter from Merri A. Baldwin, Esq. to John P. Stigi III, Esq., dated

13   October 20, 2016, attached as Exh. A).  Lead Counsel has not retained a copy of the

14   Documents; the original set remains in the custody of outside ethics counsel. *Id.*, ¶

15   5.  In following all of the foregoing steps and precautions, Lead Counsel has used

16   for guidance the exact same procedure set forth and endorsed in *Brado v. Vocera*

17   *Communications, Inc.*, 14 F. Supp. 3d 1316 (N.D. Cal. 2014), which entails closely

18   analogous facts.

19   On October 28, 2016, Defendants produced to outside ethics counsel (Ms.

20   Baldwin) a copy of a putative "Confidentiality Agreement" allegedly signed by the

21   former BofI employee in question and dated April 2012. *Id.*, ¶ 7, and Exh. B

22   attached thereto (Letter from John P. Stigi III to Merri A. Baldwin, dated October

23   28, 2016, attaching "Confidentiality Agreement").  Defendants demanded that the

24   documents be destroyed, pursuant to that Confidentiality Agreement, and

25

26   provide Lead Counsel with copies of such agreements. *Id.*  Defendants declined to
     do so. *Id.*  Plaintiff responded by letter on March 21, 2016 confirming that
27   Defendants had declined to substantiate their false charges against Plaintiff and its
     investigator. *Id.* (and Exh. N attached thereto).  Defendants did not respond. *Id.*
28   [4] Contrary to Defendants' assertion herein, Plaintiff's investigator has not "viewed"
     the documents at issue.

additionally asserted that the documents were necessarily irrelevant to the instant litigation because they allegedly predate the Class Period alleged in this case. *Id.*, Exh. B at 3.  Defendants asserted that absent Plaintiff's immediate compliance with Defendants' request, Defendants would raise the issue with the Magistrate Judge. *Id.*, Exh. B at 2.

On November 4, 2016, Plaintiff declined to destroy the documents, and responded to Defendants' demand by indicating that the documents would remain in the custody of outside ethics counsel while Defendants' planned motion was pending. *Id.*, ¶ 9, and Exh. C attached thereto (Letter from Daniel P. Chiplock to John P. Stigi III, dated Nov. 4, 2016).[5]

On December 1, 2016, Lead Counsel contacted Defendants' counsel to inquire as to the status of the discovery motion Defendants had indicated they would be bringing. *Id.*, ¶ 10 and Exh. D attached thereto.  In that same communication, Lead Counsel provided Defendants' counsel with a draft form of Protective Order patterned after the Model Protective Order in this District, and proposed that the production of the voluntarily produced documents be made subject to that Order. *Id.*

In the parties' subsequent meet and confer (on December 5, 2016), Defendants' counsel proposed, for the first time, that the "status quo" of the documents be maintained until discovery is underway, so that the documents could be folded in to the parties' other discussions about relevance and search terms. *Id.*, ¶ 11.  Plaintiff responded by letter on December 5, 2016 (attached to the Chiplock Declaration as Exh. E), in which Plaintiff indicated (among other things) that

---

[5] Defendants make reference below to Your Honor's 45-day rule for bringing discovery motions, but fail to acknowledge that they sat silent for 27 days after indicating that *they* would be bringing a motion to compel the return or destruction of the documents. *Id.*  Plaintiff should not be penalized for having taken Defendants at their word.  Plaintiff submits that the instant motion was brought promptly, at Plaintiff's urging, after Defendant failed to move as they said they would.  In any event, ordinary discovery has not yet commenced, so it is not clear whether or how the 45-day rule would apply to the instant dispute.

"relevance" was not an available objection to the documents at issue, which were produced voluntarily and part of an informal investigation. *Id.*  The parties met and conferred again on December 8, 2016 before reaching impasse, and decided that Plaintiff would take the lead in preparing the Joint Motion. *Id.*, ¶ 12.   On December 20, 2016, Lead Counsel provided Defendants' counsel with Plaintiff's draft sections of the Joint Motion, with exhibits. *Id.*  Defendants' counsel provided their sections, proposed declaration, and exhibits on Friday, January 6, 2017, at 7:47 pm EST. *Id.*

The following Monday, on January 9, Lead Counsel provided Defendants' counsel with less than two pages of edits to the draft Joint Motion, in which, among other things, Plaintiff suggested that allegedly private personal identifying information of BofI customers could be redacted from the relatively small portion of documents affected (in addition to confidential matter being designated "Confidential" under the proposed Protective Order). *Id.*, ¶ 13.  Defendants' counsel supplied their additional edits in response on January 17 (after the close of business). *Id.*

**B.**    **Defendants' Statement of Relevant Facts**

    **1.**    **Defendants Notified Lead Plaintiff That BofI's Employees and Former Employees are Subject to Strict Confidentiality Obligations**

In February and March of 2016, ex-employees of BofI began contacting BofI to complain that they were being approached by an "investigator" who seemed intent on bad-mouthing BofI and digging up dirt on the Bank.  (Stigi Decl. ¶ 2.) One ex-employee noted that the investigator repeated the allegations raised in the Erhart whistleblower action and that his tone seemed "very one-sided almost flippant, implying that BofI must be guilty."  (*Id.*)  At that time, defendants suspected that the "investigator" was working either at the behest of short sellers bent on profiting from the innuendo surrounding BofI or for counsel in one of several lawsuits filed against BofI.  (*Id.*)

On March 4, 2016, BofI wrote a letter to the investigator informing him that BofI's ex-employees are under strict contractual and federal regulatory obligations to protect the confidentiality of BofI's internal documents and materials.  (*Id.* ¶ 3, Ex. F.)  BofI asked the investigator to cease interfering with BofI's rights to maintain the confidentiality of non-public and/or privileged information.  (*Id.*)

On March 8, 2016, defendants received a letter from LCHB claiming that the investigator was acting at its behest.  (*Id.* ¶ 4, Ex. G.)  Defendants responded on March 17, 2016, requesting (among other things) that the investigator cease contact with current and former employees represented by counsel and that he stop attempting to undermine BofI's contractual rights to confidentiality.  (*Id.* ¶ 5, Ex. H.)  At the time, BofI had no reason to suspect that any employees would have taken the personal financial information of BofI's customers or that LCHB (or its investigators) would ask former BofI employees to turn over such highly confidential information belonging to third parties.  (*Id.*)

**2.    A Former BofI Employee Stole Documents Containing Third Party Financial Information in Violation of Contractual and Statutory Confidentiality Obligations**

████ a former BofI ████ stole the BofI documents at issue in this Joint Motion in violation of various contractual, statutory and regulatory confidentiality obligations.  (*Id.* ¶ 7.) ███ contractual and statutory confidentiality obligations are extensive:  (i) █ signed a Confidentiality Agreement when BofI hired █; (ii) █ is subject to the confidentiality provisions in BofI's Code of Conduct; and (iii) █ executed a Settlement Agreement with stringent confidentiality provisions in exchange for a ██ severance payment from BofI.  (*Id.* ¶¶ 15-18, Exs. J, K, L, M.) ███ also is required to follow various federal and state laws that protect the financial privacy of BofI's banking customers, including the GLBA and the CFIPA.

As relevant here, BofI's Code of Conduct states that:

Safeguarding the confidential financial information

concerning the Bank's customers is essential in maintaining the public trust.  It is the policy of the Bank that such confidential information acquired by an employee through his or her employment must be held in the strictest confidence.  Such information is to be held for Bank purposes and not as a basis for personal gain by any employee.  *Aside from routine credit inquiries, information regarding a customer may generally only be released to private persons, organizations or governmental bodies that request it with the consent of the customer involved or upon receipt of legal process, such as a subpoena or court order*.  Confidential customer information should never be discussed with anyone outside the Bank, and only with those within the Bank who have a legitimate business need to know.

(Stigi Decl. ¶ 16, Ex. J § III.A (emphasis added).)[6]           signed an agreement acknowledging      receipt and understanding of      obligations under BofI's Code of Conduct when      began      employment at BofI.  (*Id.* Ex. K.)  Similarly, the Confidentiality Agreement defines BofI's "Confidential Information" broadly to include "any information or material that is proprietary to [BofI], whether or not owned or developed by [BofI], which is not generally known other than by [BofI], and which            ] may obtain through any direct or indirect contact with [BofI]."  (*Id.* ¶ 17, Ex. L.)  The Confidentiality Agreement identifies the following as examples of confidential information: "business records," "financial statements," "customer lists and records" and "Private Consumer Information."  (*Id.*)

           promised that      would "not disclose [BofI's] Confidential Information to any person or entity without the prior written consent of [BofI]."  (*Id.*)           also agreed not to copy any of BofI's confidential information and to return all such information to BofI upon request.  (*Id.*)

BofI terminated            effective            .  (*Id.* ¶ 18, Ex. M.)  As part of      termination,            entered into a Settlement Agreement with BofI

---

[6] Despite LCHB's assertion that it did not review the stolen documents, lead counsel declares that "[n]o such putative [confidentiality agreement] was included in the Documents provided by the former BofI employee." (Chiplock Decl. ¶ 3.) This is false.  The stolen documents include BofI's Code of Conduct, which required            to maintain the confidentiality of BofI's customers' private financial information.  (*See* Stigi Decl. ¶¶ 8, 16, Ex. J.)

1  where ██ again promised not to disclose BofI's confidential information and

2  represented that no confidential information remained in ██ possession.  (*Id.*)

3  Indeed, ████████ specifically recognized that:

> (i) any information accessed, gained or learned by ██ in the course of ██ employment by the Company, including, without limitation, financial information, customer lists, customer information, information subject to the terms of the [GLBA] and the regulation promulgated thereunder, information subject to state and federal privacy laws, business plans, trade secrets, and any other business and/or technical information (collectively, "Information"), is confidential information that is the sole property of [BofI], and (ii) ██ has no rights in or to the Information.  Employee shall keep all Information confidential, shall not use or transmit any portion thereof for ██ own purposes, and shall not disclose any portion thereof to any third party.  ***Employee represents and warrants to [BofI] that… ██ returned to [BofI] all documents, or other tangible items containing or constituting Information, that were previously in ██ possession or control***.

(*Id.* § 5(a) (emphasis added).)  BofI would not have paid ████████ a severance of

████ had it known that ██ would refuse to abide by ██ commitment to return

all of BofI's confidential documents.  As explained below, ████████ violated ██

confidentiality obligations to BofI and disseminated, without notice, the private

information of BofI's customers to plaintiff and its agents.

**3.   Defendants Learn ████████ Provided the Documents ██ Stole From BofI to Plaintiff**

On October 20, 2016, defendants received a letter from Merri A. Baldwin,

Esq., purported "conflicts counsel" for LCHB.  (*Id.* ¶ 6; Chiplock Decl. Ex. A.)  In

the letter, Ms. Baldwin stated that LCHB had received a thick stack of BofI's

internal documents (1,189 pages), including documents that may be attorney client

privileged, from a former BofI employee.[7]  (*Id.*)  Ms. Baldwin represented that she

---

[7] Defendants will submit a copy of the stolen documents to the Court, under seal, if the Court would prefer to review the documents in connection with its consideration of this Joint Motion.

MPA ISO JOINT MTN FOR DETER OF DISC
DISPUTE - CASE NO. 23:15-cv-02324-GPC-KSC

1   would retain sole possession of the documents until defendants authorized their

2   release or the court ordered their release.  A purported copy of the documents was

3   enclosed with Ms. Baldwin's letter.  (*Id.*)

4        The stolen documents contained a wide variety of highly confidential and

5   non-public banking documents, including BofI customer loan files.  The stolen

6   documents contained sensitive financial information of BofI's customers, such as

7   federal tax forms, social security numbers, account numbers, financial information

8   and balances and tenant information.  (Stigi Decl. ¶ 8.)  In addition, among the

9   stolen documents were BofI's Code of Conduct, various internal lending guidelines

10  marked "Confidential – Internal Use Only," and internal emails of BofI.  (*Id.*)

11       On October 28, 2016, after reviewing the extent of the stolen documents,

12  defendants responded to Ms. Baldwin's letter and asked that she return or destroy

13  them.  (*Id.* ¶ 9; Chiplock Decl. Ex. B.)[8]  Defendants explained that: (i) ████████

14  was under strict confidentiality obligations to protect BofI's confidential

15  information; (ii) the stolen documents included reams of confidential information,

16  including the private financial information of third parties; (iii) the documents, all

17  of which were created prior to the beginning of the putative Class Period, were

18  irrelevant; and (iv) it appeared that LCHB had knowingly induced ████████ to

19  violate ████ confidentiality obligations.  (*Id.*)

20       On November 4, 2016, LCHB responded on behalf of Ms. Baldwin, rejecting

21  defendants' contention that ████████ stole the documents from BofI.  (Stigi Decl.

22  ¶ 10; Chiplock Decl. Ex. C.)  LCHB's contention is contrary to the facts—LCHB

23  has no insight into whether ████████ stole the documents and purports to have no

24

---

25  [8] This Court's Chambers' Rules require that "discovery motions shall be filed no
    later than 45 days after the event giving rise to the dispute."  Lead plaintiff did not
26  provide its sections of the joint motion to defendants until December 20, 2016,
    which is 53 days *after* defendants asked lead plaintiff to destroy or return the
27  stolen documents.  (Stigi Decl. ¶ 13, Ex. I.)  Given that LCHB did not obtain the
    stolen documents through formal channels, it is unclear whether the date of
28  defendants' first objection to the dissemination of the stolen documents acted as
    the trigger date for purposes of this Court's deadline for discovery motions.

knowledge of ███ confidentiality obligations.  LCHB also proposed tendering the issue to the Magistrate Judge.  (*Id.*)  Notably, LCHB did not respond to or even acknowledge the serious confidentiality issues arising from ████████ unlawful disclosure of the private financial information belonging to third parties.  (*Id.*)

On December 1, 2016, LCHB requested a meet and confer with defendants regarding the stolen documents.  (Stigi Decl. ¶ 11.)  During the meet and confer, the parties discussed having the stolen documents remain in the sole custody of Ms. Baldwin pending the Rule 16 conference in this action.  (*Id.*)  On December 8, 2016, LCHB confirmed its intent to proceed with a joint motion regarding the status of the stolen documents.  (*Id.* ¶ 12.)  Importantly, LCHB also agreed to no further disclosure of the stolen documents pending the resolution of the joint motion.  (*See id.* ¶ 12, Ex. I.)  LCHB provided its portions of this Joint Motion on December 20, 2016.  (*Id.* ¶ 13, Ex. I.)  Defendants provided their portions of the Joint Motion to plaintiff on January 6, 2017.  (*Id.* ¶ 13.)  In response to defendants' insert, on January 9, 2017, plaintiff provided defendants with a draft of the Joint Motion that significantly revised plaintiff's argument.  (*Id.*)  Defendants, in turn, revised their portion of the joint motion to respond to plaintiff's new arguments.  (*Id.*)

### III.  ARGUMENT

#### A.  Plaintiff's Argument

Informal investigations by parties to securities fraud lawsuits have become standard, particularly for plaintiffs who are obligated to meet the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA").  *See, e.g.*, MTD Order, Dkt. No. 64, at 30-31 ("[t]he combination of the PSLRA's strict pleading requirements and discovery stay . . . explains why the use of confidential witnesses has become so common.") (internal citations omitted).  As such, it is not unusual, but rather expected, that private plaintiffs in securities fraud cases seek to bolster their claims through independent, informal investigation, often with voluntary testimony or information provided by former employees of the

defendant company, prior to the commencement of formal discovery (which only begins after a complaint has survived a motion to dismiss and the parties have conferred under Fed. R. Civ. P. 26(f)). *Id.*; *see also* Order: Reversing in Part the Magistrate Judge's Order Granting Motion for Determination of Discovery Dispute ("Discovery Order"), Dkt. No. 80, at 11 (recognizing "that a party's right to interview witnesses is a 'valuable right' as it is a primary investigative technique" (internal citation omitted)). Such informal investigations do not entail subpoenas or compelled responses to formal discovery requests, and therefore present no burden to any party and "do not fall within the scope of formal discovery regulated by Rule 26." *See* Discovery Order, Dkt No. 80, at 6. Rule 26 "relevance" objections are thus misplaced.

Even if it were appropriate for BofI to interpose "relevance" objections at this stage, the fact that the former employee in question left BofI prior to the start of the Class Period also does not, *ipso facto*, make any information or documents in his/her possession irrelevant. Judge Curiel rejected Defendants' argument on this precise point in his recent decision on the motion to dismiss. *See* Order Denying in Part and Granting in Part Defendants' Motion to Dismiss [Dkt. No. 64] at 18 n. 5 (crediting allegations attributed to former employees employed outside of the Class Period). Other courts have also routinely held that discovery is not limited to the alleged class period. *See, e.g., In re Toyota Motor Corp. Securities Litig.*, No. CV 10-922 DSF AJWX, 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012) ("[i]t is also beyond dispute that discovery is not limited to the class period … Courts in this circuit have repeatedly stated that the class period 'does not determine the period of relevancy for discovery purposes.'" (quoting *In re Seagate Tech. II Sec. Litig.*, No. C-89-2493 (A)-VRW, 1993 WL 293008, at *2 (N.D. Cal. June 10, 1993)); *see also Washtenaw Cty. Emps.' Ret. Sys. v. Talbots, Inc.*, No. CIV.A. 11-10186-NMG, 2013 WL 5348569, at *31 n.14 (D. Mass. Sept. 23, 2013) (stating

1   that allegations of confidential witnesses not employed during the class period were

2   "relevant and probative").

3          Furthermore, although companies occasionally require their employees to

4   sign confidentiality agreements to protect trade secret, proprietary, or otherwise

5   competitively-sensitive information, such agreements cannot be used to prevent

6   such employees from disclosing information related to possible securities fraud.

7   *See, e.g., In re: JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127  (N.D. Cal.

8   2002) (limiting the scope of defendant corporation's confidentiality agreements

9   with former employees); *Brado v. Vocera Communications, Inc.*, 14 F. Supp. 3d

10  1316 (N.D. Cal. 2014) (permitting plaintiff to use documents acquired from

11  defendant corporation's former employee).  To the extent that such agreements

12  "preclude former employees from assisting in investigations that have nothing to do

13  with trade secrets or other confidential business information, they conflict with the

14  public policy in favor of even allowing current employees to assist in securities

15  fraud investigations."  *In re: JDS*, 238 F. Supp. 2d at 1137.   And where trade secret

16  information is relevant to prosecution of civil litigation, it is well settled that the

17  rights of the trade secret holder can be adequately protected by a protective order

18  restricting use of the trade secret to litigation purposes.  *Brown Bag Software v.*

19  *Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *see also In re: JDS*, 238 F.

20  Supp. 2d at 1138; *Brado*, 14 F. Supp. 3d at 1320-24.  Doing so serves the twin

21  goals of not interfering with securities fraud investigations while also protecting

22  truly confidential business information from freely entering the marketplace.

23  *Brado*, 14 F. Supp. 3d at 1323-24.  In sum, the trade secret doctrine is designed to

24  protect a company's commercial interests *vis a vis* competitors, not to shield it from

25  liability for wrongdoing.  *Id.*

26         Finally, even the purported "misappropriation" of documents by a former

27  employee does not warrant return of the documents to a defendant corporation or

28  bar their use in the litigation.  *Brado*, 14 F. Supp. 3d at 1320.  Instead, courts look

1   to various factors, including (a) the impropriety of counsel's conduct in obtaining

2   the documents (i.e., whether counsel were not forthcoming about how the

3   documents were obtained, or where counsel deliberately circumvented the

4   discovery process); (b) the incentives and disincentives to an employee for

5   wrongfully taking documents (i.e., whether the employee took the documents to

6   benefit his/her own suit, and/or whether other disincentives exist against the

7   misappropriation of documents); (c) the prejudice to the opposing party; (d) the

8   court's "imperative to pursue truth in resolving a dispute"; (e) and the public policy

9   of the Sarbanes-Oxley Act favoring whistleblowers. *Id.* As in *Brado*, the foregoing

10   factors weigh in favor here of permitting Plaintiff's use of the documents, subject to

11   privilege review and a protective order.

12       First, as in *Brado*, Lead Counsel has not engaged in any improper conduct in

13   obtaining the documents. As set forth in the Chiplock Declaration, Lead Counsel

14   have been completely forthcoming as to the manner in which they came in

15   possession of the documents, and also did not circumvent the discovery process by

16   "soliciting them," let alone from soliciting them from a *current* employee. *See id.*

17   at 1320-21. Lead Counsel also had nothing to do with the former employee's

18   alleged misappropriation of any documents from BofI, all of which came into the

19   former employee's possession years ago and well before this litigation was even

20   initiated. *Id.*

21       Second, as in *Brado*, there is "no direct benefit to the appropriator" here in

22   sharing the documents with Plaintiff. *Id.* at 1321. The former employee in

23   question is not a named plaintiff in this litigation, and no one contends that he/she

24   has any direct interest in this suit. *Id.*[9] Indeed, there may be powerful

25   "*disincentives*" here from sharing the documents for the former BofI employee in

26

27   _____

28   [9] Defendants' assumption and assertions below to the effect that the former BofI employee in question is the source of allegations attributed to CW 10 in the SAC is incorrect.

        -17-        

question if he/she may be exposed to claims for breach of contract or conversion. *Id.* (emphasis added).

Third, as in *Brado*, there is no prejudice to BofI in Plaintiff's having obtained these documents voluntarily from a third party. *Id.* at 1322-23. There is little to no cost to BofI in negotiating and agreeing to a protective order that will be necessary, in any event, going forward in the litigation. *Id.* Moreover, any "prejudice" to BofI in the form of any timing advantage that Plaintiff has obtained from acquiring these documents voluntarily from a third party, while discovery is otherwise stayed, is outweighed by the "paramount truth-seeking function of the Court" and the "public policy favor[ing] enforcement of securities laws." *Id.* at 1323 (noting that companies are prohibited from discriminating against an employee for assisting federal authorities in an investigation into securities fraud, and that "private securities litigation [also] plays an important role in the enforcement of securities laws."). And as stated above, the Protective Order will prevent any of BofI's trade secret or confidential business information—in addition to any BofI customer's financial information—from being revealed or used outside of this litigation.

As in *Brado*, Lead Counsel here took exceptional care not to become privy to any privileged or purportedly confidential information until Defendants had an opportunity to review and redact any documents they believed to be privileged. *Id.* at 1318. As in *Brado*, Lead Counsel sequestered the documents once there was any indication that they could contain privileged information, and sent them to outside ethics counsel for preservation. *Id.*; *see also* Chiplock Decl., ¶ 5. Furthermore, Lead Counsel have proposed that the parties agree to a Protective Order governing this production so as to lay to rest any concerns that any properly-designated confidential business or financial information contained in the documents will be used for any purposes other than this litigation. *Id.*; Chiplock Decl., ¶ 10. Plaintiff has accordingly followed, to the letter, the same procedure outlined and endorsed in *Brado*, under very similar facts. BofI should not be permitted to use its overbroad

1    reading and application of a confidentiality agreement with its former employee to

2    prevent these documents from ever seeing the light of day, given the public policies

3    at stake and the protections granted to legitimately "secret" information by way of

4    the proposed Protective Order.

5            Perhaps recognizing the strength of Plaintiff's argument that the Protective

6    Order would adequately protect BofI's putative confidential trade secrets or

7    business information, Defendants base virtually their entire argument on the fact

8    that "portions" of a relatively small subset of the documents at issue contain

9    putatively confidential third-party customer data, and argue that BofI's status as a

10   "bank" (with customers) puts it in a rarefied space that is not adequately protected

11   by the Protective Order.  Defendants provide no authority for this proposition.

12   Obviously, banks (as well as other companies with customers) frequently

13   participate in litigation, and protective orders such as the one submitted herewith

14   (and the Model Protective Order on which it is based) are routinely used in cases

15   involving such defendants, including cases in which customer data may be

16   produced.  *See, e.g., Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D.

17   Cal. 2015) (granting plaintiff's motion to compel Wells Fargo to produce customer

18   data, subject to protective order and limited redactions).

19           Such putatively private financial or third-party information can readily be

20   designated as "Confidential" under the Protective Order.  And in this litigation,

21   where the very bases for liability include (among other things) BofI's alleged

22   misrepresentations concerning its loan underwriting standards and lax lending

23   practices to customers (both domestic and foreign), customer information and loan

24   files are certain to be relevant and produced at some point.  *See, e.g.,* MTD Order,

25   Dkt. No. 64, at 4-11, 14-20, 24-25.  The Protective Order is perfectly adequate and

26   appropriate to protect this information from being used outside of this litigation.

27   BofI does not argue otherwise.  Further, as in *Shaw*, customers' personal

28   identifying information, including social security numbers, tax identification

MPA ISO JOINT MTN FOR DETER OF DISC
DISPUTE - CASE NO. 23:15-cv-02324-GPC-KSC

numbers, bank account numbers, telephone numbers, and addresses, may be redacted prior to production if necessary.  Defendants ignore this suggestion, and this feature of *Shaw*.

Further, as Defendants themselves admit herein, less than 150 pages out of the approximately 1,200 pages[10] at issue in this motion actually contain any putatively private customer information at all.  Plaintiff is not itself in a position to verify this statement, given the protections that have been afforded to the documents to date.  But assuming what Defendants say to be true, the relatively small scope of the materials that contain putatively private customer data (taken together with the features of the proposed Protective Order that will allow such documents to be designated "Confidential," and the fact that personal identifying information of BofI customers can be redacted if necessary) further undermines Defendants' whole-cloth argument against granting Plaintiff's requested relief.

### B.   Defendants' Argument

### 1.   Plaintiff Has Improperly Acquired the Private Financial Information of Third Parties

██████████ has illegally stolen, and now distributed to at least three individuals affiliated with plaintiff, the private financial information of BofI's customers.[11]  Both federal law and California law protect the privacy of the private financial information of banking customers.  The GLBA sets forth both "affirmative and continuing obligation[s]" on the part of financial institutions like BofI to "respect the privacy of its customers and to protect the security and confidentiality of . . . nonpublic personal information," 15 U.S.C. § 6801(a), as well as criminal penalties to prevent private individuals, like plaintiff, from "obtain[ing]

---

[10]   *See* Stigi Decl., ¶ 8.

[11]   Plaintiff concedes that its investigator, a "contract attorney," and Ms. Baldwin have viewed the stolen documents.  (Chiplock Decl. ¶¶ 2, 5.)  Although plaintiff now claims that its "investigator" has not viewed or otherwise compromised the stolen documents, it offers no evidence of its supervision of its investigator's activities to corroborate this claim.

1    . . . customer information of a financial institution" through fraudulent means.  *See*

2    15 U.S.C. §§ 6821(a)(3); 6823(a).  The CFIPA provides even greater protections

3    than the GLBA (*see* Cal. Fin. Code § 4051(b)) and states that "a financial

4    institution shall not sell, share, transfer, or otherwise disclose nonpublic personal

5    information to or with any nonaffiliated third parties without the explicit prior

6    consent of the consumer to whom the nonpublic personal information relates."  Cal.

7    Fin. Code § 4052.5.  Indeed, litigants must provide notice to third parties and an

8    opportunity to object *before* third-party financial information may be disclosed in

9    litigation.  *See In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1428

10   (2012) (concluding that notice to third parties concerning the release of their private

11   financial information "unquestionably was required" because "[t]he inalienable

12   right to privacy under the California Constitution 'extends to one's confidential

13   financial affairs.'").  Courts within the Ninth Circuit have denied discovery, even

14   where the discovery involved relevant information, where such discovery would

15   impinge on the privacy rights of unaffiliated third-parties.  *See e.g. Weidenhamer v.*

16   *Expedia, Inc.,* 2015 U.S. Dist. LEXIS 154746, at *11-14 (W.D. Wash. Nov. 13,

17   2015) (distinguishing *Shaw* and denying discovery of private information where

18   plaintiff failed to show how the information was necessary for class certification);

19   *Artis v. Deere & Co.*, 276 F.R.D. 348, 352-53 (N.D. Cal. 2011) ("Even when

20   discovery of private information is found directly relevant to the issues of ongoing

21   litigation, it will not be automatically allowed; there must then be a 'careful

22   balancing' of the 'compelling public need' for discovery against the 'fundamental

23   right of privacy.'") (citation omitted).  As explained below, the strict confidentiality

24   obligations applicable to ████████ as a former employee of BofI weigh heavily

25   against the release of the stolen documents to plaintiff's counsel.

26        The stolen documents contain nearly 150 pages of documents, portions of

27   which contain the private financial information of third parties.  (Stigi Decl. ¶ 8.)

28   The stolen documents contain highly sensitive information, including the names,

addresses, phone numbers, social security numbers, account numbers, account balances, rent rolls, tenant names and information, and tax forms of BofI's customers. (*Id.*)  Under both the GLBA and the CFIPA, BofI's customers have an expectation of privacy that their private financial information will not be stolen by former BofI employees and/or disclosed to third parties such as plaintiff. Moreover, that defendants and plaintiff may enter into a protective order, does not obviate the fact that plaintiff and its counsel are "third parties" and that BofI's customers have a right to object to the disclosure of their financial information *before* it is disseminated to plaintiff.  *See Installment Fee Cases,* 211 Cal. App. 4th at 1428.

BofI complied with its legal obligations under the GLBA and the CFIPA by creating protocols to protect the confidentiality of its customers' private financial information. (*Id.* ¶¶ 19, 20.)  Indeed, as explained above, BofI required ███████ to enter into three separate confidentiality agreements, all of which were geared towards protecting BofI's and its customers' confidential information.  (*Id.* ¶¶ 15-18, Exs. J, K, L, M.)  In addition, during ███████ s short tenure at BofI, the Bank trained ███ on ███ legal obligations to protect the privacy of BofI's customers' financial information.  ███████ executed a form stating that ███ read and understood BofI's Code of Conduct when ███ began ███ employment, which provides that "[i]t is the policy of the Bank that such [customer] confidential information acquired by an employee through his or her employment must be held in the strictest confidence." (*Id.* ¶ 16, Ex. J, § III.A, Ex. K.)  Likewise, upon ███ termination, ███████ recognized that BofI's customers' private information was protected by the GLBA and other "state and federal privacy laws."  (*Id.* ¶ 18, Ex. M, § 5(a)(i).)  Despite BofI's best efforts, however, ███████ absconded with reams of confidential information regarding BofI's customers' private financial affairs.  What is worse, ███████ then distributed BofI's customers' private information without providing any notice to BofI or to the affected third parties.

Plaintiff contends that the stolen documents are fair game for their "informal investigations" of its Section 10(b) claim against defendants.  But, plaintiff's informal investigation cannot vitiate the privacy rights of BofI's customers under the GLBA, the CFIPA, or the California Constitution.  Plaintiff has cited no authority (and defendants are aware of none) that permits private litigants to obtain the private financial information of non-parties through "informal investigations" without notice to and consent of the affected non-parties.  Moreover, defendants respectfully submit that the policy in favor of protecting the private financial information of third parties (here, individuals with no connection to plaintiff's claims regarding purported misstatements in BofI's financial reporting) greatly outweighs the supposed policy in favor of allowing ex-employees to assist in securities investigations.  Regardless, denying plaintiff access to the stolen documents will not interfere with their "informal investigations" of BofI.  Plaintiff is free to continue its attempts to interview former BofI employees and to ask them questions regarding the wrongdoing alleged in the SAC.  Indeed, defendants suspect that ███████ has already assisted plaintiff in this manner by providing the sparse allegations attributed to CW 10 in the SAC.  (*See* SAC ¶¶ 68, 234.)[12]

Plaintiff cites *Shaw v. Experian Information Solutions, Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015), to argue that it is entitled to utilize its "investigator" to obtain the stolen private financial information of third parties, without notice to the affected customers or BofI, so long as plaintiff and defendants enter into a protective order.  As explained below, *Shaw* is inapplicable to the present dispute.

In *Shaw*, the plaintiffs brought a consumer class action alleging that Wells Fargo was misreporting short-sales as foreclosures on its customers' credit reports

---

[12]   Despite ███ duties under GLBA and CFIPA, ██████████'s chose to steal and then disclose BofI's customers' private financial information. ██████████'s illegal actions undermine any inference that the allegations attributed to ██ as a CW in the SAC are "reliable."  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (the confidential witness whose statements are introduced to establish scienter "must be described with sufficient particularity to establish his or her reliability and personal knowledge.").

and failed to correct the inaccurate characterization of its customers' credit reports. *See id.* at 295-296.  For purposes of supporting their motion for class certification, the plaintiffs brought a motion to compel the production of all consumer dispute forms received by Wells Fargo, which contained an allegedly inaccurate code resulting in the improper credit reporting. *Id.* at 297-298.  Wells Fargo opposed the motion arguing that the requests for production (i) sought improper merits based discovery prior to class certification; (ii) would result in the disclosure of Wells Fargo's customers' private information; and (iii) were unduly burdensome. *Id.* at 298.  With respect to the confidentiality objections, the Court recognized that there is "a fundamental right of privacy," but that privacy rights can be overcome by showing a "compelling public need" for discovery. *Id.* at 301.  After concluding that the documents were "highly relevant" to the plaintiffs' claims in the litigation, the Court granted the motion and ordered Wells Fargo to produce the documents pursuant to a protective order, after appropriate redaction. *Id.* at 301-302.

*Shaw* is inapposite.  In *Shaw,* unlike here, the documents containing the private financial information of third parties were sought from the bank, not a former bank employee who had illegally stolen the private financial information of the bank's customers.  In addition, the plaintiffs sought the private financial information through formal channels and not an under supervised "investigator."  By serving formal discovery, the plaintiffs allowed both the Court and the bank to weigh-in on the privacy issues *before the private financial information of third parties had been compromised*.  Moreover, the consumers whose private financial information was sought were putative class members and would presumably benefit from any recovery obtained by the plaintiffs.  In contrast, here, the BofI customers whose financial information has been stolen have no interest in this lawsuit other than to possibly prevent the wide dissemination of their private financial information to plaintiff lawyers located in New York and California, and their Maryland based "investigator."  Finally, in *Shaw*, the Court found that the "highly

relevant" nature of the documents outweighed the consumers' privacy rights under the more expansive definition of relevance contained in Federal Rule of Civil Procedure 26(b)(1), effective *prior* to December 1, 2015 (stating that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). Here, the thousands of private financial loan files of BofI's customers are not relevant to this action. If this action proceeds to discovery, defendants will rely on the new proportionality requirements of Federal Rule of Civil Procedure 26(b)(1) (as well as federal and state financial privacy laws) to limit plaintiff's discovery to aggregate data concerning BofI's loans and their performance. Class action discovery is not a blank check for plaintiff to compromise the integrity of the private financial information of BofI's customers. Nor does discovery grant plaintiff free rein to second guess each of the thousands of individual lending decision by BofI during the putative class period.

The Court should order plaintiff to return the stolen documents and to destroy any copies of such documents in its possession (or in the possession of its agents and affiliates).

### 2. Plaintiff Cites No Authority Permitting Plaintiff to Undermine a Bank's Confidentiality Agreements With Its Ex-Employees

Plaintiff relies upon two cases to argue that ▮▮▮▮▮▮ and by extension plaintiff, may disregard ▮▮▮▮▮▮'s numerous confidentiality agreements with BofI. *See In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1129 (N.D. Cal. 2002); *Brado v. Vocera Commc'ns, Inc.* 14 F. Supp. 3d 1316 (N.D. Cal. 2014). As discussed below, both cases are distinguishable.

In *JDS Uniphase*, the securities plaintiff moved for an order limiting the scope of various confidentiality agreements signed by the company's ex-employees. *See JDS Uniphase*, 238 F. Supp. 2d at 1129. The company's ex-

employees had informed the securities plaintiff that they were willing to talk about relevant activities during the class period, but believed that they were unable to do so because of their confidentiality agreements with the company. *Id.* The Court entered a narrow order allowing the securities plaintiff to contact the company's ex-employees for the limited purpose of asking them ten specifically identified questions related to the allegations in the securities complaint. *Id.* at 1138 (noting that by "restricting the interviews to the questions plaintiffs have requested . . . the risk that the interviews will expand into areas of legitimate concern to [the company] is minimized."). *JDS Uniphase* is inapposite because it does not concern third-party financial information or internal company documents stolen by a disgruntled former employee. Moreover, unlike the appropriately limited scope of the investigation in *JDS Uniphase*, plaintiff here has interviewed purported ex-employees of BofI on a wide variety of topics without regard to BofI's confidentiality agreements with those ex-employees. (*See*, *e.g.*, SAC ¶¶ 227-236 (alleging irrelevant comments attributed to CWs regarding BofI's CEO's purportedly "crude" management style)); *In re Ferro Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 42191, at *34-35 (N.D. Ohio June 11, 2007) (holding that CW allegations failed to support a strong inference of scienter because CW testimony amounted to "water-cooler gossip," "irrelevant speculation" and "gratuitous criticism"). Finally, in *JDS Uniphase*, the Court limited the plaintiff to questions concerning defendants' activities *during the class period*. *See JDS Uniphase*, 238 F. Supp. 2d at 1138. In contrast, here, all the stolen documents predate the beginning of the Class Period by *at least* seven months. (Stigi Decl. ¶ 21 (the most recent document within the stolen documents is from February 2013); *cf.* SAC ¶ 1 (the class period begins on September 4, 2013).) Thus, *JDS Uniphase* does not support the release of the stolen documents to plaintiff.

The *Brado* decision also is distinguishable. In *Brado*, a former Director of Internal Audit, Finance and Administration provided certain company documents to

an investigator for a securities plaintiff in potential violation of the Director's

confidentiality agreements with the company. *See Brado*, 14 F. Supp. 3d at 1318.

Although the exact nature of the documents is not specified by the Court, the

documents were apparently "relevant to [the company's] alleged wrongdoing." *Id.*

Defendants objected to the production of the documents solely on the basis that the

ex-employee was subject to contractual confidentiality obligations in favor of the

company. *See id.* at 1318-20. The Court ordered defendants to produce the

documents subject to a protective order and a review for privilege. *Id.* at 1320.

Notably, the Court ordered the release of documents because (i) plaintiff's counsel

did not behave improperly; (ii) the ex-employee received no benefit from the

appropriation or release of the documents; (iii) the ex-employee had other

disincentives to prevent him from engaging in theft; (iv) the company suffered no

prejudice as a result of the documents' disclosure; and (v) policy favored assisting

Sarbanes-Oxley whistleblowers. *See id.* at 1320-23. As explained below, in this

action, the above factors weigh *against* plaintiff's request for the stolen documents.

First, the actions of LCHB's investigator were improper and, apparently,

minimally supervised. Despite suing BofI for purported violations of various

banking statutes and regulations, plaintiff has undermined the privacy protections

afforded to BofI's customers under the GLBA, the CFIPA and the California

Constitution. Plaintiff either knowingly obtained the private financial information

of unaligned third parties or recklessly allowed its investigator to do so. Moreover,

LCHB's investigator obtained BofI's confidential documents after being put on

notice that BofI's ex-employees are subject to strict confidentiality obligations.

(*See* Stigi Decl. ¶¶ 2-3, Ex. F.)

The second and third factors, regarding ███████'s alleged lack of

incentive to share the stolen documents, are inapplicable. Plaintiff has offered no

evidence concerning the content of the conversations between LCHB's investigator

and ███████ Thus, defendants (and the Court) are left to guess whether

1  LCHB's investigator offered ███████ "a direct benefit" in exchange for the

2  stolen documents.  Indeed, given that ███████ was undoubtedly aware of ██

3  confidentiality obligations to BofI and ███ legal obligations under the GLBA and

4  the CFIPA, it is reasonable to infer that ███ only would have taken the risk of

5  disclosing the private financial information of BofI's customers in exchange for

6  some benefit.[13]  (*See id.* ¶¶ 15-18, Exs. J, K, L, M.)  Moreover, that BofI may

7  pursue ███████ for violating ███ confidentiality obligations does not inoculate

8  against the facial impropriety of ███ decision to first steal, and then distribute, the

9  private financial information of BofI's customers.

10      The fourth factor weighs heavily in defendants' favor.  BofI will suffer

11  prejudice if the stolen documents are released to plaintiff.  In *Brado*, the Court

12  found that there was no prejudice to the company because the parties agreed that

13  the misappropriated documents would eventually be produced in discovery.  *See* 14

14  F. Supp. 3d at 1321-22.  In contrast, here, the stolen documents are irrelevant to this

15  action.  *See* Fed. R. Civ. P. 26(b)(1) (parties may obtain discovery of information

16  that is "relevant to any party's claim or defense and proportional to the needs of the

17  case" considering, *inter alia*, "the importance of the discovery in resolving the

18  issues, and whether the burden or expense of the proposed discovery outweighs its

19  likely benefit").  If this action proceeds to discovery, defendants will object to the

20  production of the irrelevant, pre-Class Period loan files and diligence materials

21  included as part of the stolen documents.  Indeed, even if the Court at some point

22  deems such documents relevant, defendants reserve their right to insist on notice to,

23  and an opportunity to object, for the affected customers.  Likewise, BofI will object

24

25

26  _____

    [13]      Although it is unclear whether plaintiff or its investigator offered ███████

27  a "direct benefit" for breaching ███ confidentiality obligations, there is no
    question that ███████ benefitted to the tune of ███ by signing the

28  Settlement Agreement with BofI in exchange for ███ promise to maintain the
    confidentiality of BofI's and its customers' private information.  (Stigi Decl. ¶ 18,
    Ex. M.)

1   to the production of the irrelevant internal emails and outdated loan policies which

2   are also among the stolen documents.

3        Finally, the public policy in favor of whistleblowers is inapplicable here.

4   Plaintiff has produced no evidence that ████████ is a "whistleblower" under

5   Sarbanes-Oxley.  To the contrary, the allegations attributed to ████████ in the

6   SAC are sparse and unrelated to any issues regulated by Sarbanes-Oxley. ███

7   ████ purportedly told plaintiff that:  (i) BofI funded "some loans" ████████ did

8   not sign-off on, (ii) BofI was a "sweatshop" and (iii) Garrabrants would terminate

9   employees who "look[ed at him] wrong."  (*See* SAC ¶¶ 68, 234.)  None of ███

10  ████████ alleged complaints regarding ███ short tenure at BofI come close to

11  whistleblowing under Sarbanes-Oxley.

12       Plaintiff fails to identify any authority that would allow the release of the

13  stolen documents and has failed to satisfy the *Brado* factors.  Accordingly, for these

14  additional reasons, the Court should order plaintiff to return the stolen documents

15  and to destroy any copies of such documents in its possession (or in the possession

16  of its agents and affiliates).

17  **IV.   CONCLUSION**

18       **A.   Plaintiff's Concluding Statement**

19       For the foregoing reasons, Plaintiff respectfully requests that it be permitted

20  to review and use the voluntarily provided documents, subject to the proposed

21  Protective Order submitted herewith and Defendants' privilege review.  Consistent

22  with applicable precedent in this Circuit, Defendants may redact any attorney-client

23  privileged matter as well as personal identifying information of third parties, and

24  provide a privilege log, prior to the documents' review by Plaintiff, and may also

25  designate as "Confidential" any information that is properly so defined under the

26  Protective Order.  Plaintiff requests that the production (and privilege log) be made

27  available within ten (10) business days after the Court has granted the relief

28  requested herein.

1

**B.      Defendants' Concluding Statement**

2        Defendants respectfully request that the Court order plaintiff to return the

3   stolen documents and to destroy any copies of such documents in its possession (or

4   in the possession of its agents and affiliates) within ten (10) business days of the

5   Court's order on this motion.  If the Court were inclined to permit plaintiff to retain

6   the documents, we request the opportunity first to contact the relevant customers to

7   determine whether they object to the disclosure of their private financial

8   information.

9
    Dated:  January 18, 2016            Respectfully submitted,
10
                                        LIEFF CABRASER HEIMANN &
11                                      BERNSTEIN, LLP

12

13                                      By:     */s/ Richard M. Heimann*
                                                Richard M. Heimann
14
                                        Richard M. Heimann (State Bar No. 063607)
15                                      rheimann@lchb.com
                                        Joy A. Kruse (State Bar No. 142799)
16                                      jakruse@lchb.com
                                        Katherine C. Lubin (State Bar No. 259826)
17                                      klubin@lchb.com
                                        275 Battery Street, 29th Floor
18                                      San Francisco, CA  94111-3339
                                        Telephone:  (415) 956-1000
19                                      Facsimile:  (415) 956-1008

20
                                        LIEFF CABRASER HEIMANN &
21                                      BERNSTEIN, LLP
                                        Daniel P. Chiplock (admitted *pro hac vice*)
22                                      dchiplock@lchb.com
                                        Michael J. Miarmi (admitted *pro hac vice*)
23                                      mmiarmi@lchb.com
                                        250 Hudson Street, 8th Floor
24                                      New York, NY  10013
                                        Telephone: (212) 355-9500
25                                      Facsimile:  (212) 355-9592

26
                                        *Counsel for Lead Plaintiff Houston Municipal*
27                                      *Employees Pension System and Lead Counsel for*
                                        *the Proposed Class*
28

1   Dated:  January 18, 2016          Respectfully submitted,

2                                      SHEPPARD, MULLIN, RICHTER &
                                       HAMPTON LLP
3

4
                                       By:      /s John P. Stigi III
5                                               John P. Stigi III

6                                      John P. Stigi III (State Bar No. 208342)
                                       jstigi@sheppardmullin.com
7                                      Polly Towill (State Bar No. 120420)
                                       ptowill@sheppardmullin.com
8                                      1901 Avenue of the Stars, Suite 1600
                                       Los Angeles, CA  90067-6055
9                                      Telephone:  (310) 228-3700
                                       Facsimile:  (310) 228-3701
10
                                       *Counsel for Defendants BofI Holding, Inc.,
11                                     Gregory Garrabrants, Andrew J. Micheletti, Paul
                                       J. Grinberg, Nicholas A. Mosich,* and *James S.
12                                     Argalas*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28