1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| IN RE BofI HOLDING, INC. SECURITIES LITIGATION | Case No.: 3:15-cv-02324-GPC-KSC |
|---|---|
| | **STIPULATED ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI) AND HARD COPY DOCUMENTS** |

11
12
13
14
15
16
17
18

    This Stipulated Order Regarding the Production of Electronically Stored

19

Information and Hard Copy Documents ("Order") shall govern the parties in the

20

above-captioned case.

21

**I.**    <u>**PURPOSE**</u>

22

    A.    This Order will govern discovery of electronically stored information

23

("ESI") and hard copy documents (collectively, "document" or "documents") in

24

this case as a supplement to the Federal Rules of Civil Procedure, and any other

25

applicable orders and rules. Nothing in this Order is intended to expand or limit

26

the parties' obligations under the Federal Rules of Civil Procedure. Any disputes

27

arising out of the production of documents subject to this Order shall be resolved

28

according to Federal Rules of Civil Procedure, Local Rule 26, and the Court's Standing Order.

## II.   IDENTIFICATION OF DOCUMENT AND DATA SOURCES

A.   Parties have a continuing obligation to identify and preserve custodial and non-custodial data sources in their possession, custody, or control that may contain information relevant to this litigation.  Sources of custodial or non-custodial documents and ESI may include desktop servers, computers, laptops, local hard drives, file servers, databases, SANs, NASs, email servers, web servers, any shared drives, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces removable storage, email, removable storage media, on-line data storage such as Dropbox or Google Drive, and physical or hard copy files and documents.

B.   A party claiming that ESI or any other evidence is not reasonably accessible because of undue burden or cost under Fed. R. Civ. P. 26(b)(2)(B) shall provide a list of sources, form and location of such ESI or evidence with reasons as to inaccessibility and costs.  The parties agree that such inaccessible ESI or evidence shall be preserved and agree to meet and confer regarding production of documents and evidence from these sources or seek relief from the Court as needed.  Parties will nonetheless exchange an index or describe the types of documents and their sources which constitute undue burden or cost to produce.

C.   Documents and ESI from identified custodial and non-custodial data sources will be preserved during this litigation.

## III.   SEARCH & REVIEW

A.   The parties agree that in responding to a Fed. R. Civ. P. 34 request, the parties shall provide a list of search terms and other parameters or methods they intend to use to harness and identify documents and other evidence for

1  production.  The parties may add, change or supplement these upon agreement or

2  upon relief form the Court.

3        B.     The parties will notify each other in advance if they intend to use any

4  software, techniques or technology, such as predictive coding or technology

5  assisted review in producing responsive documents and provide details of the

6  software, techniques or technology and the work flow process for the same.  The

7  parties will meet and confer in advance to mutually agree about the deployment of

8  such software, techniques or technology, the protocol and the work flow process,

9  and in the absence of agreement, seek relief from the Court.

10        C.     Prior to use, the parties must meet and confer to disclose and discuss

11  any other proposed use of technologies not specified herein to reduce the number

12  of documents to be reviewed or produced (*i.e.*, file type culling, e-mail thread

13  suppression, etc.).  Use of these technologies to reduce the reviewable collection or

14  production, other than as described, requires the mutual consent of the parties and

15  will be subject to a mutually agreeable protocol for the use of such technologies to

16  be negotiated by the parties.

17  **IV.**   **GENERAL PRODUCTION PROVISIONS**

18        A.     The parties have agreed that ESI should be produced as TIFF images

19  and in Native format where applicable with accompanying data and image load

20  files.

21        B.     **TIFF Image Files**:  The parties agree that all documents, with the

22  exception of documents produced in Native Format, will be produced as single-

23  page black and white Group IV TIFF image files of at least 300 dpi resolution with

24  1 bit depth.  Page size shall be 8.5 x 11 inches, unless in the reasonable judgment

25  of the producing party, a particular item requires a different page size.  Each image

26  file will use the Bates number of the page as its unique file name.  Original

27  document orientation as displayed in the native file should be maintained in the

28  TIFF image (*i.e.*, portrait to portrait and landscape to landscape).

C.   **Large Documents**:  Documents exceeding 2000 pages will be split up in parts of 2000 pages each.  Each such split part will be bates stamped with a consecutive alphabetic suffix – e.g. XYZ1000A, XYZ1000B and so on.  The metadata for these split up parts will be identical in the load files.

D.   **Text Files:**  Each document produced under this Order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page.  Each text file shall be named to use the Bates number of the first page of the corresponding production item.  The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents as applicable.  The .DAT load file shall include a link to the corresponding text file.

i.   **OCR Text Files:**  The parties will provide searchable OCR text of any paper documents, including spreadsheets maintained in paper form that were scanned or otherwise converted into electronic form prior to the time the documents are first produced in this litigation.  The parties acknowledge, however, that not all documents such as photographs and documents with handwritten notes may lend themselves to the generation of accurate OCR.  OCR software should be set to the highest quality setting during processing.  Documents containing foreign language text will be OCR'ed using the appropriate settings for that language. Setting such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

ii.   **Extracted Text Files from ESI**:  The parties shall extract the text of each ESI item directly from the ESI native file.  For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

iii.   **OCR Text for Redacted Documents**:  The parties will provide searchable OCR text for any redacted files.

E.   **Bates Numbering**:

i.      Each TIFF image produced under this Order should be assigned a Bates number that must:  (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production.  If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

ii.      The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size.  If the receiving party believes that a Bates number obscures the content of a document, then the receiving party may request that the document be produced with the Bates number in a different position.

iii.      Where a requesting party seeks re-production of a set of documents produced in a prior litigation or any other proceeding, or where a prior production of documents or ESI by a party in a prior litigation or any other proceeding is the only reasonably accessible source of those documents or ESI to be produced by a party in this litigation, the producing party may re-produce such documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the producing party as part of the productions set.  For any such re-production in accordance with this Paragraph, the producing party is not obligated to re-format the prior production in accordance with the production specifications in this ESI Order, but must provide Bates numbering and confidentiality designations specific to this litigation.

1   F.   **Parent-Child Relationships**:  Parent-child relationships for all

2   embedded ESI documents (*e.g.*, the association between an attachment and its

3   parent email), must be preserved by assigning sequential Bates numbers to all

4   items within the parent-child group, and identifying those Bates numbers in the

5   relevant ESI metadata and coding fields specified in Appendix 2.  For example, if

6   a party is producing an email with embedded attachments, the attachments must be

7   processed and assigned Bates numbers in sequential order, following consecutively

8   behind the parent email.

9   G.   **Color Documents**:  If an original ESI document contains color text,

10  markings or graphics, and the receiving party believes it is necessary to view such

11  document in its original color to understand its full meaning or content, then the

12  receiving party may request that the ESI document be produced in color format.

13  The producing party shall then reproduce such document(s) and/or ESI in color

14  JPEG format, or in native format.  This section applies particularly to documents

15  that are produced as TIFF images.

16  H.   **Confidentiality Designations**:  If a particular document has a

17  confidentiality designation, the designation shall be stamped on the face of all

18  TIFF images pertaining to such document, in the lower left-hand corner of the

19  document, or as close thereto as possible while preserving the underlying image.

20  If the receiving party believes that a confidentiality designation obscures the

21  content of a document, then the receiving party may request that the document be

22  produced with the confidentiality designation in a different position.  No party may

23  attach to any filing or any correspondence addressed to the Court (including the

24  Magistrate Judge), or any adverse or third party, or submit as an exhibit at a

25  deposition or any other judicial proceeding, a copy (whether electronic or

26  otherwise) of any native format document produced by any party without ensuring

27  that the corresponding Bates number and confidentiality legend, as designated by

28  the producing party, appears on the document.  For each document that is marked

confidential, a Confidentiality field will be populated with the word "Confidential" in the .dat file.

I.   **Load Files**:  All productions will be provided with data load files and image load files as detailed in Appendix 1.  The data load file should be in standard Concordance format (.DAT).  The image load file must be in standard Option (.OPT) format and must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.  In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files (each TIFF page or native file is a single file) is one file per folder.

**V.   PRODUCTION OF HARD COPY DOCUMENTS**

A.   All hard copy documents will be scanned as described in Section IV.B above and produced in electronic form.  Where necessary and practicable, hard copy documents in color will be scanned in color to ensure full information is communicated in the scanned copy.  Scanned color documents will be provided in JPG file format.

B.   Unitization of Paper Documents:  To the extent practicable, hard copy documents shall be produced in the manner in which those Documents were kept in the ordinary course of business, and shall be unitized using logical document determinations ("LDD").

C.   Identification:  Where a document or group of documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

D.   Custodian Identification:  The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level

1    custodian, which are included in a single production, are produced in consecutive

2    Bates stamp order.

3          E.     Metadata:  The metadata associated with each hard copy document

4    need only identify the Bates number, the custodian associated with that hard copy

5    document, and any Confidential Designation or Redaction applied to that

6    document.

7    **VI.    PRODUCTION OF "ESI"**

8          A.     **De-NISTING and System Files:**  ESI productions shall be de-

9    NISTed using the industry standard list of such files maintained in the National

10   Software Reference Library by the National Institute of Standards & Technology.

11   De-NISTED files need not be produced.  The parties may mutually agree upon any

12   additional file types that can be excluded from review and production.  A

13   producing party shall identify any additional standard, readable, and reviewable

14   file types which have been excluded from its document review population for any

15   production made following the date of this Order, and will utilize reasonable best

16   efforts to do the same with respect to any productions made prior to the date of this

17   Order.

18         If a party excludes from review a standard, readable, and reviewable file type

19   not within the industry standard, that party must disclose such an exclusion to the

20   other parties.

21         B.     **Native Files:**

22         Certain files types, such as PDF files, presentation-application files (e.g., MS

23   PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), photographs, and

24   multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg,

25   and .avi), shall be produced in native format, except where production in native

26   format would reveal privileged or otherwise protected information.  For files

27   produced in native format, the producing party shall provide a single-page TIFF

28   slipsheet with the applicable Bates stamp indicating that a native item was produced.

The corresponding load (.DAT) file shall include a NativeFilelink which provides the relative path linking information for each native file that is produced.  In addition, the confidentiality designation will be indicated in the name of the native and text file where reasonably feasible.

C.     **Metadata Fields and Processing:**

i.     ESI shall be processed in a manner that preserves the source native file and all metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements provided in this Order.  Time-zone metadata shall be processed and standardized to Pacific Standard Time Zone (PST).

ii.     **Hidden text**:  ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments.  Upon request, a producing party will produce files with any such information in native format.

iii.     **Compressed Files and Encrypted Files:**  Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.  The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

iv.     **Metadata and Coded Fields**:  ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

D.     This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the document; provided, however, that the producing party must populate, where possible, the (a) BegBates, (b) EndBates,

(c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. These fields should be populated for all produced ESI, as well as paper documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

## VII.   Databases, Structured, Aggregated or Application Data

A.      The parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source or otherwise maintained by an application. To the extent there are any dynamic databases (*e.g.*, SQL and SAP) for which document extraction would be substantially burdensome and/or the extracted format is not usable, the parties will meet and confer to discuss to determine the most reasonable form of production based on the specific circumstances.  If one or more other formats of electronically-stored information come to light that due to their complex nature may not be appropriate for production as TIFF images or as Native files, the parties will meet and confer in good faith to discuss a mutually agreeable production format or formats.  Prior to any such meet and confer, a party will provide sufficient information to enable the other party to evaluate the best method and format of production, including such information as the database or data store name, business purpose, database or data source owner, database schema, tables, column/field definitions, standard reports, export capabilities, and administrator, programmer and user  manuals.  If the parties cannot reach agreement, the matter will be decided by the Court or its designee.

B.      **Proprietary or Special Software**.  To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as

may arise with respect to obtaining access to any such software and operating manuals.

**VIII.** **Responsiveness, Privilege & Redactions.**

A.     The parties agree that if any document (*e.g.*, an e-mail) is responsive to a document request, all attachments to that document shall be deemed responsive to that request.  Likewise, if any attachment to a document is responsive to a document request, all portions of the document to which it is attached and all other attachments to that document shall be deemed responsive to that request.

B.     To the extent that a party reasonably determines that one or more responsive documents, or a portion or portions thereof, are not discoverable because they are subject to the attorney-client communication privilege, the work product doctrine, or otherwise not discoverable on the basis of a recognized privilege or protection, the party shall produce a privilege log consistent with all relevant orders of the Court and the requirements set forth in Section IX of Magistrate Judge Crawford's Chambers' Rules for Civil Pretrial Procedures.  For redacted documents where there is more than one redaction, the redactions shall be addressed on the log together, unless the grounds for redaction are different, in which case each redaction shall be addressed in the log with sufficient information to allow a party to understand the basis for the redactions.  The parties agree that communications with their outside counsel relating to the following actions need not be listed in the log: (1) *In re BofI Holding, Inc. Securities Litigation*, 3:15-cv-02324-GPC-KSC (S.D. Cal. filed Oct. 15, 2015); (2) *Charles Matthew Erhart v. BofI Holding Inc.*, 3:15-cv-02287-BAS-NLS (S.D. Cal. filed Oct. 13, 2015); (3) *BofI Federal Bank v. Charles Matthew Erhart*, 3:15-cv-02353-BAS-NLS (S.D. Cal. filed Oct. 19, 2015); (4) *BofI Federal Bank v. Pamela Erhart*, 2016-CV-000008 (Kansas State Court filed Jan. 22, 2016); (5) *BofI Federal Bank v. Sofia Cornell*, 37-2016-16599-CU-NP-CTL (San Diego Super. Ct. filed May 17, 2016);

and (6) *Garrabrants v. Charles Matthew Erhart*, 37-2017-39440-CU-NP-CTL
(San Diego Super. Ct. filed Oct. 20, 2017).

C.    **Redactions:**

The parties agree that where ESI items need to be redacted, they shall be
produced solely in TIFF format with each redaction clearly indicated.  Any unaffected
data fields shall be provided.  The redaction of any material for privilege or other
reason shall be governed by provisions contained in the Protective Order entered in
this action.  The Producing Party shall either produce the redacted file in the
reasonably useable form or shall produce the redacted copy in native format.
Documents that are to be produced in native format, but that require redactions may
be produced as TIFF images with the relevant portions redacted, or if a TIFF image
production is not practicable (e.g., the file is a video or very large spreadsheet), the
producing party may produce a copy of the native file with the relevant portions
replaced with "REDACTED," a black redaction box, or a similar mark.  If
modification of a native file is required for redaction purposes, metadata information
associated with that file should remain unchanged, unless it also requires redaction.
For each document that is redacted, a Redaction field will be populated with the word
"REDACTED" in the .DAT file.

If the items redacted and partially withheld from production are PowerPoint-
type presentation decks or Excel-type spreadsheets as addressed herein and the native
items are also withheld, the entire ESI item must be produced in TIFF format,
including unprivileged pages, hidden fields and other information that does not print
when opened as last saved by the custodian or end-user.  For Excel and PowerPoint
type files, the following printing options shall be enabled:

| Excel Print to TIFF Options |
| --- |
| • Unhide columns and rows<br>• Unhide worksheets<br>• Autofit columns and rows, settings to be over by columns first and, then down by rows<br>• Wrap text<br>• Print gridlines<br>• Do not apply Autofilter<br>• Display headings<br>• Display comments<br>• Header and Footer filename field handling:  Show field code |

| PowerPoint Print to TIFF Options |
| --- |
| • Print notes pages<br>• Print hidden slides<br>• Print comments |

The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible.  If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content.  If the content is a voice or audio recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content.  For redacted items which were originally ESI, all metadata fields will be provided and will include all non-redacted data.  A document's status as redacted does not relieve the producing party from providing all of the metadata required herein.

D.   **De-duplication:**

The producing party need only produce a single copy of a particular ESI item, and may de-duplicate ESI vertically by custodian, or horizontally (globally) across the population of records.  Duplicates shall be identified by using industry standard MD5 or SHA-1 hash values only to create and compare hash values for exact matches at the document level only.  The resulting hash value for each item shall be reflected in the

.DAT load file in the HashValue field specified in Appendix 2.  If a producing party elects to de-duplicate horizontally, the producing party shall identify custodians who were in possession of a de-duplicated document in the CustodianOther metadata field specified in Appendix 2.  This means that the field "CustodianOther" will be populated showing all custodians who had a copy of the same document which is not being produced because of de-duplication.  De-duplication shall not break apart families and shall be performed at a family level.  A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups.  If any member of a family group is produced, all members of that group must be also be produced or else logged as privileged and no such member shall be withheld from production as a duplicate.  The producing party agrees that the presence of a custodian's name contained in "CustodianOther" field in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.  No document that is the parent or an attachment of a produced document may be withheld as a duplicate.

## IX. <u>MISCELLANEOUS PROVISIONS</u>

A. **<u>Objections Preserved</u>:**  Nothing in this Order shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

i. **<u>Modifications</u>**:  Recognizing that each producing party may experience production issues due to, among other things, individual and/or proprietary electronic mail or other data systems that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to

facilitate the timely and economical production of documents or ESI.  No party shall unreasonably object to any such variance.

ii.    **Cost Allocation**:  The parties agree to bear their own costs relating to the production, storage, and maintenance of ESI as provided in this Order.  However, if a party claims that ESI or any other evidence is not reasonably accessible because of undue burden, pursuant to Section II.C., *supra*, the parties shall meet and confer regarding cost allocation, and may seek relief from the Court as needed.

iii.    **Lost or Destroyed Documents**:  If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business or not occurring in accordance with the Party's document retention policies, the Producing Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists.  Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

B.    **Hard Copy Document Storage**.  During the pendency of this litigation, the parties shall make reasonable efforts to preserve the originals of all hard copy documents produced to the opposing parties and, in particular, to preserve the originals of all notebooks or other handwritten documents as to which there may be issues of legibility of all or any part of the production copy.  Each party reserves the right to request to inspect such original documents of the opposing party or parties, which request shall not be unreasonably denied.  If such request to inspect is denied, the party may seek relief from the Court.

C. **Reproduction as Natives**.  The parties agree that to the extent any party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing party shall respond reasonably and in good faith to any such request.

D. **Load File Specifications**.  The parties agree that all load files associated with any production by any party shall conform to the Concordance standard load files (.DAT) and Opticon Standard image load files (.OPT) per examples set forth in Appendix 1 below.

# Appendix 1:  Production Delivery Requirements

Image Load Files

- Image load (cross-reference) files should be produced in Concordance Image (Opticon) format.

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (*e.g.*, ABC001.OPT).

- The volume names should be consecutive (*e.g.*, ABC001, ABC002, et seq.).

- There should be one row in the load file for every TIFF image in the production.

- Every image in the delivery volume should be cross-referenced in the image load file.

- The imageID key should be named the same as the Bates number of the page.

- Load files should not span across media (*e.g.*, CDs, DVDs, hard drives, etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

- Files that are the first page of a logical document should include a "Y" where appropriate.

- Subsequent pages of all documents (regular document, email, or attachment) should include a blank in the appropriate position.

Sample Concordance/Opticon Image (.OPT) Load File:

MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3

MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,

MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,

MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2

MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,

Concordance Data Load Files:

- Data load files should be produced in Concordance .DAT format.

- The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 20);

- Quote - þ (ASCII 254);

- Newline - ® (ASCII174).

- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.

- All date fields should be produced in mm/dd/yyyy format, if possible.

- All attachments should sequentially follow the parent document/email.

- Use carriage-return to indicate the start of the next record.

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (*e.g.*, ABC001.DAT).

- The volume names should be consecutive (*e.g.*, ABC001, ABC002, et seq.).

Sample Concordance .DAT Load File:

þBegBatesþ¶þEndBatesþ¶þBegAttachþ¶þEndAttachþ¶þPgCountþ¶þCustodianþ

Sample Native file link/path:

The .DAT file shall contain a relative path to the corresponding Native file:

PROD001\Natives\001\ABC00015.xls

OCR/Extracted Text Files

OCR or Extracted Text files shall be provided in a separate directory containing document level text files.  The .DAT file shall contain a relative path to the corresponding text file.  OCR or Extracted text itself should not be included in the .DAT file:

PROD001\TEXT\001\ABC00015.txt

### Appendix 2:  ESI Metadata and Coding Fields

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic documents and are automatically generated as part of the electronic data discovery process.   Any ambiguity about a metadata field should be discussed with the receiving party prior to processing the subject ESI for production.

| Field Name | Field Description |
|---|---|
| BegBates | First Bates number (production number) of an item |
| EndBates | Last Bates number (production number) of an item (**this field should be populated for single-page items). |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (*i.e.*, Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| All Custodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FileSize | Size (in kilobytes) of the source native file |

| Field Name | Field Description |
|---|---|
| SourceFilePath[1] | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename.  Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| NativeFileLink | Relative path for documents provided in native format only.<br>**The linked file must be named per the BegBates value. |
| SourceParty | Name or entity of party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |
| FileType |  (*e.g.*, Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent (Date and Time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and Time fields may be combined) |

---

[1] This field may be excluded if the producing party determines it includes information protected by any applicable privilege or immunity.

| Field Name | Field Description |
|---|---|
| Parent_Date | The date associated with a family's parent record, which is assigned as follows:<br><br>Emails populated with 1st occurrence: **DateSent** or **DateReceived** or **LastModDate**<br><br>Email Attachments populated with Parent Email's date from above<br><br>Outlook Appointments populated with 1st occurrence: **StartDate** or **LastModDate**<br><br>Loose Edocs populated with 1st occurrence: **LastModDate** or **DateCreated** |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded or grouped items |
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and Time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |

| Field Name | Field Description |
| --- | --- |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| Date Last Printed | Date the document was last printed |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties  (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the document; any value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |
| Redacted | User-generated field that will indicate redactions.  With the word "REDACTED".  Otherwise, blank. |
| Confidentiality | User-generated field that will indicate confidentiality.  With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS EYES ONLY" as applicable.  Otherwise, blank. |

Pursuant to stipulation, **IT IS SO ORDERED**.

Dated:  May 11, 2021

Hon. Karen S. Crawford
United States Magistrate Judge