UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re BofI HOLDING, INC. SECURITIES LITIGATION | Case No.: 15-cv-2324-GPC-KSC<br><br>**ORDER:**<br><br>**(1) REGARDING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 4; and**<br><br>**(2) DENYING MOTION TO SEAL**<br><br>**[Doc. Nos. 281, 282]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 4 (the "Joint Motion"). Doc. Nos. 281 (redacted) and 283 (under seal). Plaintiff seeks an order compelling defendants to search for and produce additional documents responsive to certain Requests for Production ("RFPs"). *See id.* The parties also move to seal the exhibits to the Joint Motion, and portions of the Joint Motion that quote or reveal the contents of those documents. Doc. No. 282. The Court heard argument on the dispute during a November 5, 2021 discovery conference. *See* Doc. No. 274. For the reasons that follow, the Court **DENIES** plaintiff's request to compel a supplemental production from defendants. The Motion to Seal is **DENIED**.

# BACKGROUND

The Court assumes the parties' familiarity with the facts of the case. Regarding the instant dispute, plaintiff seeks documents "relating to BofI's decision to pursue lawsuits against former internal auditor Charles Matthew Erhart, his mother, and his girlfriend."[1] Doc. No. 281 at 3. Erhart reported his suspicions that the Bank and its management were engaged in fraud to regulators, and, after being terminated from his employment, sued BofI in October 2015 for allegedly retaliating against him for his whistleblowing activities. That case, *Erhart v. BofI*, S.D. Cal. Case. No. 3:15-cv-02287-BAS-NLS (hereafter "*Erhart*"), is pending in this District and is scheduled to begin trial in February. Erhart's complaint undisputedly informed plaintiff's allegations of securities fraud herein. *See generally* Third Amended Class Action Complaint for Violations of the Federal Securities Laws, Doc. No. 136 (hereafter "TAC").

Six days after Erhart filed suit, BofI sued him in this District for, *inter alia*, breach of contract, conversion, and computer fraud, alleging that he had failed to safeguard and improperly disclosed the Bank's confidential information. *See BofI Federal Bank v. Erhart*, S.D. Cal. Case No. 3:15-cv-02353-BAS-NLS (hereafter the "Countersuit").[2] In 2016, BofI separately sued Erhart's girlfriend, Sofia Cornell, for allegedly "allow[ing] Erhart to store the confidential information he stole from BofI on her laptop," and sued Erhart's mother, Pamela Erhart, for allegedly "receiving and storing confidential information that Erhart stole from BofI on her computer." *See* Doc. No. 281-1 at 138.

Plaintiff moves the Court to order defendants to produce two categories of documents related to the Erhart Family Lawsuits: (1) meeting minutes and other materials for BofI's Board of Directors meetings during which the lawsuits were discussed, and (2) "email communications referencing those lawsuits." Doc. No. 281 at 3. To capture

---

[1] The Court adopts plaintiff's convention and refers to these actions collectively as the "Erhart Family Lawsuits." *See* Doc. No. 281 at 3.

[2] The Countersuit was later consolidated with *Erhart*. *See Erhart* Docket, Doc. No. 22.

documents in the second category, plaintiff suggests that defendants run the search terms "(Matt* OR Erhart) AND (lawsuit OR sue OR Pamela OR mom OR mother OR girl-friend OR Sofia OR Cornell)" through the ESI of five document custodians, including some of the named defendants.  Doc. No. 281-1 at 10.  Plaintiff asserts that the request is timely, and that these documents are relevant and responsive to previously served Requests for Production.  Doc. No. 281 at 3-7.  Defendant opposes plaintiff's request as untimely, asserts the requested documents are irrelevant, and objects that the proposed search is overbroad, burdensome, and likely to capture privileged documents.  *Id.* at 8-11.

## **DISCUSSION**

### **A. Plaintiff's Motion to Compel Is Untimely**

To facilitate meaningful meet and confer between the parties, while at the same time encouraging diligence, avoiding delay, and providing the parties with finality as to their disputes, the undersigned requires that discovery disputes be brought to the Court's attention within 30 days of the date the discovery responses were received.  *See* Chambers' Rules and Civil Pretrial Procedures for the Honorable Karen S. Crawford ("Chambers' Rules"), § VIII.B.  Here, the discovery requests to which the requested documents are purportedly responsive were served on December 23, 2020 and March 12, 2021.  *See* Doc. No. 281-1 at 35, 102.  Defendants' responses were served on January 21, 2021 and March 12, 2021, respectively.  *Id.* at 88, 127.  The parties then engaged in protracted negotiations regarding search terms, including several conferences with the Court and the Court's staff, and ultimately reported to the Court that they had reached agreement.[3]  *See, e.g.*, Doc. Nos. 193, 200.  Plaintiff did not request the supplemental responses or propose additional document searches related to these discovery requests until September 2, 2021 – the date

---

[3] The parties reported on May 10, 2021 that they had reached agreement on search terms for all but three RFPs, not at issue in this dispute.  *See* Doc. No. 200 (referring to ongoing negotiations for search terms related to RFPs 9, 10 and 38); *compare* Doc. No. 281 at 3 n. 3 (stating that the instant dispute relates to RFPs 3, 7, and 49-55).  The Court ordered the parties to continue meeting and conferring and to bring any remaining search-term related dispute to the Court's attention by May 19, 2021.  *See* Doc. No. 200.  The parties did not raise any further disputes related to search terms before the deadline passed.

by which the Court had ordered defendants to complete their document production – and did not bring the parties' disagreement to the Court's attention until October 18, 2021.[4] Accordingly, the Court finds that plaintiff's demand for supplemental discovery responses, and subsequent request for the Court's assistance in resolving the parties' dispute, were untimely.

The Court does not find persuasive plaintiff's position that they did not, and could not, appreciate the connection between the "nature of the purportedly stolen materials at issue in the Erhart Family Lawsuits" and Erhart's allegations of fraud until August 2021. Doc. No. 281 at 3-4. The Court finds that this connection is readily apparent from defendants' complaint in the Countersuit and subsequent filings, not least of which is their request for an injunction to prohibit Erhart from further disseminating confidential information that he allegedly "misuse[d] … by causing it to be published …in his complaint [in *Erhart*]." *See* Countersuit Docket, Doc. Nos. 1, 7-1 at 8. Plaintiff's assertion that defendants' August 2021 interrogatory responses "first confirmed that the Erhart Family Lawsuits are relevant to allegations in this case" is also belied by plaintiff's own operative complaint, which is admittedly "premised" on "information readily obtainable on the Internet," including the "pleadings and other documents" filed in *Erhart* and the Countersuit. *See* TAC at 5. Among the documents cited by plaintiff in the TAC is Erhart's declaration from the Countersuit, in which he confirms that "[e]ach document" BofI alleged he improperly "accessed" and disclosed "was specifically related to one of the allegations of wrongdoing [he] had discussed with Mr. Ball and then reported to federal law enforcement." *See* Countersuit Docket, Doc. No. 27-4; *see also* TAC at 32, 68 (citing Erhart's declaration). Given the allegations in the TAC and plaintiff's repeated citation to the Countersuit therein, the Court finds plaintiff's assertion that it was previously unaware

---

[4] On October 18, 2021, the parties moved for an extension of time to raise this and other disputes. Doc. No. 265. The Court granted the request, but explicitly cautioned that in doing so, it "[did] not make any findings or rulings as to the timeliness of any dispute" referenced in the Joint Motion. Doc. No. 266 at 2.

that the Countersuit was related to Erhart's allegations of fraud (and the documents that purportedly corroborated them) is not credible.

The Court is likewise not persuaded that plaintiff could not have understood the relationship between Erhart's whistleblower allegations, the allegations in the TAC, and the Bank's legal actions against his mother and girlfriend until recently. Doc. No. 281 at 4. In support of its demand for additional documents from defendants, plaintiff states that deposition transcripts from the *Erhart* matter[5] revealed to them "that the confidential Bank information Erhart shared with his mother and girlfriend included the same materials he collected for regulators." *Id.* Plaintiff identifies three specific items of information gleaned from recent discovery that purportedly provided crucial "additional context" that was not previously known to them: (1) that "in the course of his work as an auditor, Erhart collected certain Bank documents that he ultimately provided to regulators"; (2) that Erhart copied his mother on emails transmitting documents to regulators; and (3) that Erhart stored or accessed some of the documents he provided to regulators on his girlfriend's computer. *See* Doc. No. 281 at 3-4. The Court shares defendants' skepticism that these facts – particularly the first – were unknown to plaintiff until now, considering plaintiff's heavy reliance on *Erhart* and related actions in the TAC. *See* Doc. No. 281 at 8 ("Surely plaintiff figured out the connection between the allegations in the *Erhart* action and the TAC sometime prior to Defendants' August 2021 discovery responses."). But, even assuming plaintiff's ignorance was genuine, it was not excusable, because all of the above-described "additional context" was available to plaintiff through both the *Erhart* and Countersuit dockets as early as 2016.[6] Indeed, many of the very deposition excerpts plaintiff relies

---

[5] The District Court ordered production of the *Erhart* transcripts on September 29, 2021. Doc. No. 257.

[6] A nonexhaustive list of such available information includes the following Docket Entries from the *Erhart* case: Doc. No. 12 (BofI's motion for spoliation sanctions, indicating that Erhart had destroyed information stored on his laptop and his girlfriend's computer that he had already provided to regulators as a whistleblower); Doc. No. 18 (Erhart's opposition to sanctions motion, describing his compilation of documents, together with his own "research," that he ultimately turned over to regulators); Doc. No. 18-

upon in support of its motion to compel are publicly accessible.[7]  Given plaintiff's ready access to and close monitoring of these dockets, the Court cannot agree that plaintiff "diligently investigated the potential relevance of the Erhart Family Lawsuits and timely raised the issue with Defendants."  Doc. No. 281 at 5.

During conference with the Court, plaintiff's counsel attempted to justify their belated request that defendants search for additional documents by stating that before receiving transcripts from depositions taken in *Erhart*, "there was a question mark as to what needed to happen internally at the [B]ank before it could bring the lawsuits against Mr. Erhart or his family members," but that the *Erhart* transcripts had "erased" that question mark by "divulging" that the Bank's Board of Directors would have approved any legal action in the Bank's name.  *See* Doc. No. 274 at 21; *see also* Doc. No. 281 at 4 (plaintiff stating that its "understanding of the relevance" of the Erhart Family Lawsuits

---

[4] (Erhart's declaration stating, *inter alia*, that he "kept a record" of confidential information, some of which he gave to his mother for "safekeeping," and which he stored on both his and his girlfriend's computers); Doc. No. 18-5 (Erhart's deposition testimony describing his uploading of documents to his personal email account, which he later provided to regulators); Doc. No. 18-6 (Erhart stating in a sworn declaration that "Because of my well-founded fears at the time, I blind-copied my mother, Pamela Erhart, on an email transmission to the OCC for safekeeping in the event some harm came to me.  Attached to that email, March 6, 2015, was an Internal Audit Memo dated February 12, 2015 that included the Global Cash Card High Risk Customer Review…"); Doc. Nos. 89 and 104 (the parties' stipulations that Erhart's and his girlfriend's depositions, taken in the lawsuit against his girlfriend, could be used in *Erhart* for all purposes because the two actions "arose from one of the same transactions or occurrences are raised in the Federal Action, and was based on the same facts"); and the following Docket Entries from the Countersuit: Doc. No. 27-4 (Erhart's sworn declaration in which he acknowledges giving his mother confidential information for "safekeeping," and storing whistleblower-related documents on both his and his girlfriend's computers); Doc. No. 30 (briefing on BofI's motion for an injunction prohibiting Erhart from further public disclosure of the information in his whistleblower complaint); Doc. No. 30-3 (declaration of BofI's counsel describing alleged "leak" of confidential information that parallels allegations in the *Erhart* complaint and the TAC, and attached exhibits in support of same); Doc. No. 30-4 (letter from the OCC to BofI's general counsel regarding confidential information contained in Erhart's whistleblower complaint); Doc. No. 30-5 (Erhart's testimony that he blind-copied his mother when he transmitted documents to the OCC, and that he accessed some information from his girlfriend's computer).

[7] At a minimum, the following pages of Erhart's December 6, 2015 deposition transcript, attached to the Joint Motion and cited by plaintiff, are also publicly available on the *Erhart* and Countersuit dockets: 68, 93-98, 104-120, 124-127, 184, 190-193, 202-203.  *See* Countersuit Docket, Doc. No. 30-5; *Erhart* Docket, Doc. No. 18-5.

"further developed" through review of the *Erhart* transcripts). The Court notes that plaintiff requested the supplemental production of documents on September 2, 2021 – weeks before receiving the *Erhart* deposition transcripts – undermining any suggestion that the *Erhart* transcripts were essential to plaintiff's ability to request this information from defendants. *See* Doc. No. 281-1 at 5.

Furthermore, as described above, there was a wealth of information available to plaintiff regarding the Erhart Family Lawsuits. If plaintiff had "question marks" about defendants' decision-making process surrounding these lawsuits, it had ample opportunity during the parties' lengthy search term negotiations to ensure that the parties' agreed-to search terms would "erase" those question marks. That is the very purpose of discovery. *See Stevens v. CBS Corp.*, No. 3:11-cv-06073 RBL, 2012 WL 3763641, at *2 (W.D. Wash. Aug. 29, 2012) ("The purpose of discovery is to obtain potentially relevant information, not simply to confirm facts already known."). Plaintiff chose not to do so. The Court will not exercise its "broad discretion…to permit or deny discovery" in a manner that rewards plaintiff's lack of diligence by requiring defendants to search for responsive documents anew. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citation omitted).

The Motion to Compel is accordingly **DENIED** as untimely. Because timeliness is "a dispositive threshold issue," the Court does not reach the parties' other arguments. *See* Doc. No. 257 at 5.

**B. Motion to Seal**

The parties move to seal excerpts of Erhart's and defendant Garrabrants's depositions taken in the *Erhart* matter, and portions of the Joint Motion that quote from those excerpts. Doc. No. 282. Plaintiff opposes sealing "any portion" of the documents but was required to move for sealing under the terms of the operative Protective Order [Doc. No. 173]. *See id.* at 2. Defendants ask to maintain the documents under seal and note that the District Court permitted defendants to produce the *Erhart* transcripts in accordance with the Protective Order because of the "highly sensitive information contained therein." *Id.* at 3.

1    The right of the public "'to inspect and copy … judicial records and documents'" is
2    well established. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir.
3    2006) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). The Court
4    starts with "a 'strong presumption in favor of access' is the starting point," which the party
5    seeking sealing "bears the burden of overcoming." *Id.* *Honolulu*, 447 F.3d 1172, 1178
6    Where, as here, the documents to be sealed are attached to a non-dispositive discovery
7    motion, the party requesting sealing must make a "'particularized showing'" of "'good
8    cause.'" *Id.* at 1180 (citation omitted).

9    It is axiomatic that the Court cannot justify sealing information that is "already
10   publicly available." *Id.* at 1184; *see also Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-
11   04984-JST-MEJ, 2015 WL 1006534, at *6 (N.D. Cal. Mar. 6, 2015) (finding good cause
12   for sealing did not exist where "the same or similar information … ha[d] been made
13   available for public viewing"). As noted above, many of the excerpts of Erhart's deposition
14   that plaintiff relied upon are already publicly available, and as to those excerpts, the Motion
15   to Seal is **DENIED**. Plaintiff shall re-file these documents consistent with the terms of this
16   Order within 4 days of the date of this Order.

17   As to the remaining deposition excerpts, plaintiff is correct that in this Circuit,
18   designation of a document as "Confidential" pursuant to a blanket protective order is not
19   sufficient to establish good cause for sealing. Doc. No. 282 at 2. As the Ninth Circuit has
20   explained, "confidential categorization of discovery documents under the [blanket]
21   protective order was not a guarantee of confidentiality, especially in the event of a court
22   filing" because the Court is required to "mak[e] an individualized determination" as to the
23   sealing of "specific documents." *Kamakana*, 447 F.3d at 1183; *see also Beckman Indus.*,
24   *Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (noting that blanket protective orders
25   are "by nature overinclusive" and do not require a "'good cause' showing under [Rule]
26   26"); *Small v. Univ. Med. Ctr. of S. Nevada*, No. 2:13-cv-00298-APG-PAL, 2015 WL
27   1281549, at *3 (D. Nev. Mar. 20, 2015) (noting that "[b]lanket protective orders are entered
28   to facilitate the exchange of discovery documents" and do not make any "findings that a

particular document is confidential or that a document's disclosure would cause harm.") (citation omitted).

It is also true, however, that the undersigned's Chambers' Rules prohibit parties from filing exhibits to discovery motions that are extraneous to the dispute. *See* Chambers' Rules, § VIII.E.1.c. (directing parties to include only "necessary and relevant exhibits" and to refrain from including meet-and-confer correspondence). The Court also specifically admonished the parties not to file excessive exhibits in connection with the instant Joint Motion. Doc. No. 274 at 23 ("Please don't give me 40 exhibits. I just need to see the portions of the Erhart transcripts that are pertinent to the … other information."). This guidance has been largely ignored. The Court did not require, for example, 35 pages of excerpted testimony from Erhart's deposition to establish that "in the course of his work as an auditor, Erhart collected certain Bank documents that he ultimately provided to regulators," a fact the Court understands to be undisputed. *See* Doc. No. 281 at 4-5 (citing documents Bates-stamped BofI000605595-630 for this proposition). The Court also notes that given its determination that plaintiff's Motion to Compel was untimely, it was not necessary for the Court to consider the excerpts of defendant Garrabrants's testimony. The superfluous exhibits will accordingly be stricken from the record.

The Court is aware that the Joint Motion contains a direct quote from Garrabrants's deposition, which the parties have redacted in the publicly available version of the Joint Motion. *See* Doc. No. 281 at 5. However, the Court does not find that defendants' generic reference to "highly sensitive information" is sufficient to meet their burden to "show[] that specific prejudice or harm will result" if these two lines of testimony are not sealed. *See Anderson v. Marsh*, 312 F.R.D. 584, 594 (E.D. Cal. 2015) (noting that "party seeking protection" must make this showing to establish good cause). The Court also does not find good cause to seal the direct quote from Erhart's deposition. *See* Doc. No. 281 at 5. Although the Court could not confirm whether the specific page cited by plaintiff was publicly filed in *Erhart* or the Countersuit, it is indisputable that Erhart's fears for his safety and discussion of those fears with his friends and family have been extensively discussed

in public filings. *See, e.g., Erhart* Docket, Doc. Nos. 1, 18-4; Countersuit Docket, Doc. Nos. 27-4, 30-5. Therefore, the unredacted Joint Motion must be filed on the public docket within 4 days of the date of this Order.

For future discovery motions, the parties are advised that the Court follows the Circuit's established precedent and that designation of documents or testimony under the Protective Order, *standing alone*, will not be considered sufficient to demonstrate good cause for sealing. However, the Court will not abide either party using this rule as a pretext to file extraneous information on the public docket. Documents that are not germane to a dispute will be stricken. The Court also expects the parties to be aware of whether information is already publicly available, either on the docket in this matter or in related litigation, and to refrain from requesting sealed treatment for publicly available materials.

## ORDER

For the reasons stated above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion to compel the supplemental production of documents responsive to its Requests for Production served on December 23, 2020 and March 12, 2021 [Doc. No. 281] is **DENIED**.

2. The parties' Motion to Seal [Doc. No. 282] is **DENIED**.

3. Within 4 days of the date of this Order, plaintiff must file the unredacted Joint Motion, and pages 68, 93-98, 104-120, 124-127, 184, 190-193 and 202-203 of the December 6, 2015 deposition of Charles Matthew Erhart taken in the *Erhart* matter, on the public docket.

**IT IS SO ORDERED.**

Dated: November 30, 2021

Hon. Karen S. Crawford
United States Magistrate Judge