UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re B of I HOLDING, INC. SECURITIES LITIGATION | Case No.: 15-cv-2324-GPC-KSC<br><br>**ORDER ON DISCOVERY DISPUTES REGARDING THE BANK EXAMINATION PRIVILEGE**<br><br>[Doc. Nos. 300, 301] |

Before the Court are two joint discovery motions related to defendants' assertion of the bank examination privilege (hereafter sometimes "BEP") on behalf of the Office of the Comptroller of the Currency ("OCC" or the "Agency"), and the documents withheld or redacted on the basis of that privilege. *See* Doc. Nos. 300 (redacted) 318 (under seal), 301 (redacted); 318-1 (under seal). Plaintiffs dispute the assertion of privilege, and alternatively assert that there is good cause to override the privilege. *See generally id.* The OCC also filed a brief at the Court's invitation stating its position as to the parties' dispute. *See* Doc. No. 299. At the Court's request, defendants lodged a sampling of the disputed documents with the Court for an *in camera* review. *See* Doc. No. 326. Having considered the arguments of counsel, the applicable law, and based on its *in camera* review, the Court now enters the following Order.

1

## I. BACKGROUND

Plaintiff alleges in this class action that defendants BofI ("BofI" or the "Bank") and certain of its officers and directors made materially misleading statements to investors in violation of federal securities laws. *See generally* Doc. No. 136. In responding to plaintiff's discovery requests, the Bank and its counsel were required to evaluate whether any responsive documents were protected by the bank examination privilege and, if so, to withhold them as privileged and log them accordingly. Because it is the OCC and not the Bank who holds the privilege, it was then incumbent upon plaintiff to request that the OCC waive the privilege as to any protected documents. *See* Doc. No. 194.

Between August 20, 2021 and September 7, 2021, as their document production was nearing completion, defendants produced privilege logs to plaintiff, which indicated that defendants withheld or redacted over 29,000 documents as protected by the BEP (hereafter the "Withheld Documents").[1] Doc. No. 300 at 3. Pursuant to the procedures agreed to by the parties, plaintiff then contacted the OCC and requested that the agency waive the privilege as to these documents. *See* Doc. No. 299-1 at 8-22. The OCC declined to review all of the Withheld Documents, but instead – and with the parties' agreement – invited plaintiff and defendants to each select 20 documents to serve as exemplars (hereafter the "Exemplar Documents"), which the OCC would review and provide "guidance as to whether defendants had properly asserted the bank examination privilege." *See* Doc. No. 299-1 at 8.

The OCC conveyed its final determination regarding waiver on November 2, 2021. *See id*. Of the 40 Exemplar Documents reviewed, the Agency determined that two did not contain any bank examination privileged information, and that seven others did contain

---

[1] The parties and the OCC provided inconsistent figures and often rough approximations regarding how many documents were at issue. Pursuant to the Court's Order (Doc. No. 326), defendants reported that they asserted the bank examination privilege over a total of 29,067 documents. Of those, 25,602 were withheld in their entirety and 3,465 were redacted. Defendants also reported that of the 25,602 documents withheld from production, 4,225 duplicates were produced to plaintiff in other non-privileged contexts.

bank examination privileged information but that the protected information could have been redacted rather than withholding the document in full. *See* Doc. No. 299 at 5; Doc. No. 299-1 at 4-5. The Agency also considered plaintiff's request to waive the privilege and found that waiver was appropriate as to some sent by the Bank to the OCC bearing on specific allegations in the operative complaint that the Bank deceived the OCC. *Id.* at 5. Accordingly, the OCC "authorize[d] the Bank to produce email communications, and their corresponding attachments, that specifically respond to the allegations contained in paragraphs 73, 75-78, 83-84, 122, 125, and 187" of the Third Amended Complaint. *See id.* at 5; Doc. No. 136. The Agency declined otherwise to waive the privilege. *See* Doc. No. 299-1 at 5.

After several discovery conferences wherein the matter of the OCC's review was discussed, the Court ordered the parties to file two joint motions: first, a motion to compel production of any nonprivileged information within the Withheld Documents, and second, a request for judicial review of the OCC's final decision regarding waiver. *See* Doc. No. 292. These Motions followed. In the first Motion (Doc. Nos. 300, 318), which the parties have styled the "Factual Information Motion," plaintiff asks the Court to compel defendants to produce any factual information contained within the Withheld Documents, arguing that the privilege does not extend to such information. In the second Motion (Doc. Nos. 301, 318-1), which the parties have styled the "BEP Documents Motion," plaintiff asks the Court to find as to any privileged information that there is good cause to waive the privilege (essentially setting aside the OCC's determination) and to compel the wholesale production of all Withheld Documents.

## II.   LEGAL STANDARDS

The bank examination privilege protects communications between banks and their regulators from disclosure, with the aim of "preserv[ing] and promot[ing] candor" in such communications. *Southeastern Penn. Transp. Auth. v. Orrstown Fin. Svcs., Inc.*, 367 F. Supp. 3d 267, 277 (M. D. Penn. 2019). "Practicality necessitates the bank examination privilege," which exists "to preserve a safe banking environment." *In re Bank One Sec.*

*Litig., First Chicago S'holder Claims*, 209 F.R.D. 418, 426 (N.D. Ill. 2002); *see also United W. Bank v. Office of Thrift Supervision*, 853 F. Supp. 2d 12, 16 (D.D.C. 2012) (observing that open communication between banks and regulators "is essential to effective bank supervision") (citation omitted).

### III.  DISCUSSION

#### A. Factual Information Motion

In the Factual Information Motion, plaintiff argues that the bank examination privilege does not apply to purely factual information, such that the privilege never attached to any factual information in the Withheld Documents. *See* Doc. No. 300 at 6-10. Plaintiff requests an order compelling defendants to re-review all Withheld Documents and produce any factual information contained therein. *Id.* at 12.

The Court agrees with plaintiff that the privilege protects opinions and deliberations, not facts. *See Southeastern Penn.*, 367 F. Supp. 3d at 277 ("The privilege does not apply to factual information.") (citation omitted). Factual information, if relevant to the parties' claims and defenses, is not privileged and is discoverable. *See id.* (citation omitted). Plaintiff asserts that the Withheld Documents are relevant to plaintiff's claims. Defendants do not seriously contest their relevance, stating only that plaintiff has not shown them to be "***materially***" relevant. Doc. No. 300 at 14 (emphasis added). The Court is not aware any authority for such a heightened standard of relevance. Furthermore, although defendants "disagree that [the] documents are 'relevant' . . . simply because they hit on a search term," *id.*, the ESI search used to capture the documents was one that both parties agreed was an appropriate tool to locate relevant evidence.

Of course, relevance alone is not sufficient to justify overriding the OCC's privilege assertion. Rule 26 expressly provides that privileged information "'may be withheld'" in discovery, "'even if it is relevant to the lawsuit and essential to the establishment of plaintiff's claim.'" *Chowdhury v. Northwest Airlines Corp.*, 226 F.R.D. 608, 610 (N.D. Cal. 2004) (quoting *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982)). As defendants point out, "all documents contain facts" (Doc. No. 300 at 14 n.12), and where those facts are

"intertwined with the OCC's opinions, conclusions and recommendations" such that "the deliberative portions cannot be redacted from the documents," the privilege is properly asserted over the entire document. *In re Providian Fin. Corp.*, 222 F.R.D. 22, 26 (D.D.C. 2004); *see also Southeastern Penn.*, 367 F.Supp.3d at 277 (noting that where possible, "an agency should redact the documents and produce the factual material," but where the opinion and facts are "inextricably intertwined," the Court must instead determine whether the privilege should be overridden). Furthermore, the Court rejects plaintiff's assertion that the Bank "must . . . produce 'internally disseminated communications not sent to the OCC'" because internal documents are *per se* outside the scope of the privilege. Doc. No. 300 at 10. As plaintiffs admit, it is possible for internal communications to convey the substance of the OCC's communications and deliberations with the Bank. *See id.*

With these principles in mind, the Court conducted an *in camera* review of the Exemplar Documents.[2] The purpose of the Court's review was to evaluate whether the documents were relevant, and if so, whether defendants had properly asserted the bank examination privilege on the OCC's behalf or whether defendants withheld nonprivileged factual information that should have been produced to plaintiff. Although the Court's review consisted of the same set of documents as reviewed by the OCC, the Court conducted its review *de novo* and without regard to the OCC's findings. Based upon its review, the Court makes the following findings:

///

///

///

---

[2] Defendants lodged the Exemplar Documents with the undersigned's chambers in accordance with the Court's Order. Doc. No. 326. Documents withheld entirely from production were designated with a control number beginning with "CTRL" and accompanied by cover sheets indicating that the documents were withheld from production. Documents that were produced with redactions were designated by a Bates number beginning with "BofI" and the redacted information was identified by yellow highlighting. All documents were lodged in electronic form, and all but several voluminous spreadsheets were also provided in hard copy.

| No. | CTRL or Bates Number | Court's Assessment of Privilege Assertion |
|---|---|---|
| 1 | BofI000035769 | Document[3] contains BEP-protected information that has been appropriately redacted |
| 2 | BofI000265186 | Document does not contain BEP-protected information |
| 3 | BofI000282692 | Document contains BEP-protected information but some nonprivileged factual information has been redacted |
| 4 | BofI000347489 | Document contains BEP-protected information but some nonprivileged factual information has been redacted |
| 5 | CTRL0011116 | Document contains BEP-protected information with which information is inextricably intertwined |
| 6 | CTRL0011132 | Document contains BEP-protected material, but factual information is separable |
| 7 | CTRL0011146 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 8 | CTRL0011171 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 9 | CTRL0011259 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 10 | CTRL0011330 | Document contains BEP-protected information with which factual information is inextricably intertwined |

---

[3] The Court's use of "document" denotes the document and all attachments. Unless stated otherwise herein, the Court's assessment of privilege is the same for all documents in the family.

| No. | CTRL or Bates Number | Court's Assessment of Privilege Assertion |
|---|---|---|
| 11 | CTRL0012257 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 12 | CTRL0013940 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 13 | CTRL0014127 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 14 | CTRL0016187 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 15 | CTRL0016754 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 16 | CTRL0035562 | Document contains BEP-protected information, but factual information is separable |
| 17 | CTRL0037667 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 18 | CTRL0044079 | Document does not contain BEP-protected information |
| 19 | CTRL0176178 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 20 | CTRL0313237 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 21 | CTRL0319551 | Document does not contain BEP-protected information |

| No. | CTRL or Bates Number | Court's Assessment of Privilege Assertion |
|---|---|---|
| 22 | CTRL0335301 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 23 | CTRL0335567 | Document does not contain BEP-protected information |
| 24 | CTRL0405332 | Document does not contain BEP-protected information |
| 25 | CTRL0405881 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 26 | CTRL0407812 | Document does not contain BEP-protected information |
| 27 | CTRL0695401 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 28 | CTRL0702432 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 29 | CTRL0707859 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 30 | CTRL0781437 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 31 | CTRL0806639 | Document contains BEP-protected information, but factual information is separable |

| No. | CTRL or Bates Number | Court's Assessment of Privilege Assertion |
|---|---|---|
| 32 | CTRL1443487 | As to cover email: Document contains BEP-protected information, but factual information is separable<br><br>As to attachment(s): Document does not contain BEP |
| 33 | CTRL1863586 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 34 | CTRL1864142 | Document contains BEP-protected information, but factual information is separable |
| 35 | CTRL1864938 | As to cover email: Document contains BEP-protected information, but factual information is separable<br><br>As to attachment(s): Document does not contain BEP |
| 36 | CTRL1865322 | Document does not contain BEP-protected information |
| 37 | CTRL1874921 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 38 | CTRL1909890 | Document contains BEP-protected information with which factual information is inextricably intertwined |
| 39 | CTRL3077198 | Document contains BEP-protected information with which factual information is inextricably intertwined |

| No. | CTRL or Bates Number | Court's Assessment of Privilege Assertion |
|---|---|---|
| 40 | CTRL3082302 | As to cover email: Document contains BEP-protected material, but factual information is separable<br><br>As to attachment (CTRL ending in -306): Document contains BEP-protected material, but factual information is separable<br><br>As to all other attachment(s): Document does not contain BEP-protected information |
| 41 | BofI000267927 [4] | Document contains BEP-protected information |

On the question of relevance, although it would be impossible to say with certainty that all 29,067 Withheld Documents are relevant, the Court finds the limited Exemplar Documents it reviewed *in* camera were well within Rule 26's broad scope and by extrapolation the Withheld Documents satisfy this standard. Therefore, any purely factual material within the documents that can reasonably be separated from privileged information must be produced to plaintiff.

The Court observes that its findings mirror those reached by the OCC. *See* Doc. No. 299-1 at 4-5. Indeed, the parties report that subsequent to the OCC's review, certain of the Exemplar Documents were produced to plaintiff, either because the OCC waived the privilege or because the OCC determined that defendants withheld or redacted information that was not privileged. Doc. No. 301 at 14. Following its *in camera* review, therefore, the

---

[4] This document was not among the Exemplar Documents but is attached to the Motions as Exhibit E (as originally produced to plaintiff) and Exhibit F (with an additional proposed redaction). *See* Doc. Nos. 302-6 and 318-2. Defendant has requested to clawback the information to implement the proposed additional redaction. The Court finds that this request is appropriate because the document identifies the OCC as the source of the information under discussion and illuminates the OCC's particular concerns as relayed to defendants.

Court requested that defendants lodge the subsequently produced documents. *See* Doc. No. 347. Based on its review of those documents, the Court finds that, for those documents the Court determined contained both bank examination privileged and factual information not inextricably intertwined with privileged material, the segregable factual information has already been produced to plaintiff.[5]

The Court turns to the question of whether defendants must review the remaining Withheld Documents. Defendants protest that they have already determined that the bank examination privilege applies to these documents. Doc. No. 300 at 15. Although the Court does not doubt defendants' good faith in making that determination – and plaintiff's assertions of "abuse" are not well taken, *see id.* at 10 – both the OCC's and the Court's independent review demonstrate that defendants' assessments were not always right. It is "not irrational to infer" that if defendants improperly asserted the bank examination privilege over some of the Exemplar Documents, they also did so with respect to some portion of the Withheld Documents. *See Campidoglio LLC v. Wells Fargo & Company*, 870 F.3d 963, 976 (9th Cir. 2017). Defendants' good faith does not absolve them of the responsibility to correct these errors. The Court therefore finds that defendants must review the Withheld Documents and, considering the Court's (and the OCC's) guidance, assess whether the bank examination privilege applies.[6] If it does, defendants must also ascertain whether any factual information can be separated from the privileged information and

---

[5] There are, however, five documents the Court determined did not contain bank examination privileged information which do not appear to have been produced to plaintiff: BofI000265186, CTRL0319551, CTRL0335567, CTRL0405332, and CTRL0407812. The OCC identified these documents as not subject to the bank examination privilege, but potentially subject to withholding for other reasons. *See* Doc. No. 299-1 at 5. The purpose of the Court's *in camera* review was to determine whether the information was subject to the bank examination privilege, and the Court has not been provided with any information or explanation regarding other reasons for withholding the documents. The Court therefore makes no finding as to whether any other privilege is properly asserted.

[6] The Court notes that the OCC takes no position on whether defendants are obligated to conduct a second review of the Withheld Documents as a result of the exemplar review. Doc. No. 299 at 4 n.4.

produced to plaintiff with appropriate redactions.[7]

The Court is not persuaded that the task of reviewing these documents is unduly burdensome or disproportional to the case. Based on the Court's own review, defendants' estimate that a team of ten reviewers would need ten months to complete this review appears significantly overstated. As will be discussed in more detail below, the Court estimates that with reasonable diligence the review could be completed with 30 days.

**B. The BEP Documents Motion**

In the BEP Documents Motion, plaintiff argues that as to those documents over which the bank examination privilege has been properly asserted, the Court should nevertheless find good cause to override the privilege and compel production of the Withheld Documents. *See* Doc. No. 301 at 3-10; *see Southeastern Penn.*, 367 F. Supp. 3d at 277 (noting that where "opinion and factual material are inextricably intertwined, [the] court must determine whether to override the privilege for good cause"). The OCC states that in its review of the Exemplar Documents, it "took into consideration" whether there was good cause to waive the privilege and weighed plaintiff's "needs and allegations" against the Agency's "need to protect supervisory information and communications." Doc. No. 299 at 3-4. The OCC asserts that "no good cause exists here to waive the privilege any further" than the Agency has already done. *Id.* at 6. Defendants also oppose plaintiff's request, both on the basis that the Court should "[h]onor" the OCC's determination and because plaintiff has not demonstrated good cause for waiver. Doc. No. 301 at 11-18.

As a preliminary matter, the Court finds that, contrary to the OCC's assertions, plaintiff's request that the Court determine whether there is good cause to override the privilege is properly before it, even though the OCC is not a party to this Action. *Cf.* Doc. No. 299 at 3 (the OCC's statement that "judicial review" of the Agency's privilege

---

[7] Excluded from defendants' review are the 4,225 documents produced to plaintiff in other, nonprivileged contexts. Since plaintiff is already in possession of those documents, the Court determines it would be disproportional to the needs of the case to require defendants to re-review them.

12

15-cv-2324-GPC-KSC

1  determination "is not procedurally proper as part of the instant action"). The Court notes
2  that under controlling Ninth Circuit authority, the OCC's *Touhy* regulations neither "create
3  an independent privilege to withhold government information" nor supplant the Federal
4  Rules of Civil Procedure with respect to the discoverability of that information. *See Exxon*
5  *Shipping Co. v. U.S. Dep't of the Interior*, 34 F.3d 774, 780 (9th Cir. 1994) (finding that
6  "federal district courts . . . can adequately protect" both the parties' right to evidence and
7  the government's interest in nondisclosure by applying "the federal rules of discovery");
8  *Erhart v. BofI Holding, Inc.*, No. 15cv2287-BAS (NLS), 2018 WL 5994417, at *4 (S.D.
9  Cal. Nov. 15, 2018) (noting that "the OCC regulations by themselves are insufficient to
10 override the discovery procedures in the Federal Rules"). Although plaintiff's request for
11 the documents was directed to defendants and not the OCC, the OCC's participation in this
12 dispute was required because the privilege "belongs to the [A]gency and cannot be waived
13 by private parties." *See Erhart*, 2018 WL 5994417, at *5. For that reason, the OCC was
14 provided notice of the motion and an opportunity to present its position. The Court
15 concludes that "[t]he Federal Rules, and not the APA, govern this matter," and will proceed
16 with its analysis accordingly. *See Sec. Exch. Comm. v. Lent*, No. C-04-4088 CW (EMC),
17 2006 WL 8434734, at *4 (N.D. Cal. Jan. 12, 2006).[8]

18  Because it is a qualified privilege, the bank examination privilege may be overcome
19 by a showing of good cause. *See In re Subpoena Served Upon Comptroller of the Currency*
20 ("*Fleet*"), 967 F.2d 630, 634 (D.C. Cir. 1992); *see also In re Bank One Sec. Litig.*, 209
21 F.R.D. at 427 (noting that "[t]he bank examination privilege is not an absolute privilege"
22 and "'may be overridden where necessary'") (citation omitted). The burden is on the party
23 seeking to overcome the privilege to establish good cause exists to do so. *See id.*

---

[8] Although the Court applies the Federal Rules and precedent in determining this dispute, it rejects plaintiff's position that the OCC's determination regarding privilege is entitled to no deference at all. *See* Doc. No. 301 at 4 (stating that "this Court owes no deference to the OCC's determinations regarding the [bank examination privilege]"). The OCC is the holder of the privilege and is in the best position to determine the Agency's interest in keeping its information confidential.

To ascertain whether good cause to overcome the privilege exists, "the [C]ourt must balance the importance of the privilege against the need for the information and its availability from other sources." *In re Wilmington Trust Sec. Litig.*, No. 10–990–SLR–SRF, 2016 WL 9753979, at *7 (D. Del. Aug. 16, 2016). To do so, courts generally apply a balancing test of five factors:

(1) The relevance of the privileged information;

(2) The availability of other information;

(3) The seriousness of the litigation;

(4) The role of the government in the litigation; and

(5) The possible chilling effect of disclosure.

*See id.* (citing *Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 220-21 (D.C. Cir. 1993) and *Fleet*, 967 F.2d at 634). The Court considers each of these in turn.

1. Relevance

For the reasons discussed above, and based on its review of the Exemplar Documents, the Court finds that the Withheld Documents are relevant to plaintiff's claims. This factor weighs in favor of disclosure.

2. Availability of Information from Other Sources

The OCC determined that information relevant to plaintiff's generalized allegations of "widespread mismanagement" is available from other sources, such that intruding upon privileged communications is improper. Doc. No. 299-1 at 5; *see also* Doc. No. 299 at 6-7 (stating that plaintiff can assess defendants' alleged deficient internal controls and mismanagement "through direct review of [d]efendants' own books and records, and testimony from bank employees and expert witnesses, even if such information was also independently reviewed in OCC examinations"). The Court agrees. Certainly, it is hard to reconcile plaintiff's assertions that the Bank's misconduct was "widespread" and evidenced only by communications with the OCC.

After over a year of exhaustive discovery efforts, plaintiff has at its disposal: over 85,000 documents produced by defendants in response to more than 100 requests for

production, documents produced by third parties in this litigation, defendants' responses to plaintiff's interrogatories and any other written discovery responses, and deposition testimony (and associated exhibits) of defendants and current and former Bank employees taken in two other cases. Plaintiff has also deposed, or will depose, 15 percipient or party witnesses in this matter, and has been or will be afforded the opportunity to question any of defendants' 15 deponents. In plaintiff's own words, it seeks access to the OCC's privileged information because it would "substantiate" information plaintiff has learned from former employees and would "provid[e] *further evidence*" of defendants' misconduct. Doc. No. 299-1 at 17 (emphasis added). Accordingly, the Court finds that plaintiff has not established that there is no other evidence of defendants' "widespread mismanagement" available to it. *See In re Bank One Sec. Litig.*, 209 F.R.D. at 427 (finding that good cause to overcome the privilege did not exist where "[p]laintiffs have been afforded adequate forms of alternative information"). Therefore, this factor weighs against a finding of good cause to override the OCC's privilege *in toto*.

As the OCC correctly perceived, however, plaintiff's allegations that the Bank and its executives were not truthful in certain communications with the Agency necessarily require access to those communications, which are not otherwise available to plaintiff. *See* Doc. No. 299 at 6-7. The Court agrees with the OCC that "non-privileged evidence cannot meet plaintiff's needs" with respect to allegations that "[d]efendants presented OCC with an inaccurate picture of the Bank's internal controls." *See id*. Accordingly, the Court finds this factor weighs heavily in favor of disclosure of the OCC's privileged information insofar as it is relevant to the allegations in the Third Amended Complaint that BofI falsified information provided to the OCC.

3. Seriousness of the Litigation

Unsurprisingly, plaintiff argues that the "serious bank misconduct" alleged in its operative complaint justifies waiver of the privilege. Doc. No. 301 at 9. The Court does not dispute that "public confidence in the fairness of financial markets" is important. *See id*. It does not follow, however, that disclosure of the OCC's privileged information is required.

As one court aptly noted, "the policies underlying the bank examination privilege are not necessarily eclipsed whenever the policy in favor of securities disclosure surfaces." *Providian*, 222 F.R.D. at 29. Other than a generic statement that confidence in the financial markets is important, plaintiff offers no specific reason to "preempt the policies underlying the bank examination privilege" in this case. *See id.* Accordingly, the Court finds that this factor weighs against compelling the wholesale disclosure of the Withheld Documents.

### 4. The Government's Role in the Litigation

The OCC is not a party to this litigation, and "does not have a direct interest" in its outcome. *See In re Bank One Sec. Litig.*, 209 F.R.D. at 428 (declining to find good cause to override privilege where "the government's interest in th[e] case [was] minimal"). Furthermore, neither the OCC's conduct nor its accountability for that conduct are at issue in this case. The Court finds that this factor weighs against disclosure.

### 5. The Possible Chilling Effect if Disclosure Is Required

"A break in confidentiality could have a 'chilling effect' on the ability of bank regulators to perform their duties in the future." *In re Bank One Sec. Litig.*, 209 F.R.D. at 428. The Court finds that disclosure of the OCC's confidential communications could impede candid discussions between Agency personnel and banks in the future, which weighs against disclosure. Plaintiff argues that the protective order in place in the Action "minimize[s]" any potential harm from disclosure. Doc. No. 301 at 10 (citation omitted) (alteration in original). However, given the Court's findings as to the other factors – and particularly its finding that plaintiff has not established that information about defendants' misconduct is not otherwise available to it, with limited exceptions – the mitigating effect of the protective order does not alter the Court's analysis. The Court finds this factor weighs against disclosure.

### 6. Conclusion Regarding Good Cause Analysis

For the foregoing reasons, the Court finds that, on balance, plaintiff has not shown good cause to override the bank examination privilege with respect to all 29,067 Withheld Documents. The Court further finds that plaintiff has shown good cause to override the

bank examination privilege for documents relevant to its allegations that defendants provided falsified information to the OCC, because the relevance of the information and its unavailability from other sources. Accordingly, with respect to this information, the other factors weighing against disclosure are overcome.

The Court notes, again, that its determination is consistent with those of the OCC, and that the Agency has already authorized a limited waiver of the bank examination privilege for "communications . . . that specifically respond to the allegations contained in paragraphs 73, 75-78, 83-84, 122, 125 and 187" of the operative complaint. *See* Doc. No. 299-1 at 5. Therefore, during their review, defendants must also assess whether any of the Withheld Documents relate to these allegations, such that they are within the scope of the OCC's waiver and the Court's finding herein.

## C. Timing of the Parties' Review

As noted, the Court finds that by proceeding with diligence, defendants should be able to review the remaining Withheld Documents ***within 30 days*** of this Order. Defendants must produce the documents that they determine can be produced to plaintiff in redacted form (or with fewer redactions contained in the documents as previously produced), if any, on a rolling basis in weekly installments. Plaintiff must in turn diligently review the documents it receives and must complete its review of any newly produced documents ***within 45 days*** of this Order. The Court expects the parties to work cooperatively to prioritize the review to allow depositions to proceed apace. Indeed, the parties have represented to the Court that there are at least 14 fact witnesses "whose testimony is not dependent on the BEP-designated documents." Doc. No. 276 at 10.

The Court has repeatedly admonished the parties that good cause to modify the schedule is absent where the parties' inability to meet deadlines is the result of their "dilatory and combative approach to discovery." Doc. No. 293 at 5. The instant dispute is illustrative. The parties were aware no later than April 2021 that documents responsive to plaintiff's discovery requests would likely be subject to the bank examination privilege, and that they would be required to seek waiver of that privilege from the OCC. Instead of

engaging in an early and ongoing dialogue – among themselves or with the Agency – regarding the volume of documents impacted, however, plaintiff awaited the completion of defendants' document production and service of defendants' privilege log to begin to address the issue. Plaintiff apparently contacted the OCC within days of receiving defendants' privilege log on August 20, 2021, but then let the matter drop until several weeks later, until October 7, 2021. To its credit, the OCC worked to review the Exemplar Documents and provided guidance to the parties by November 2, 2021.[9] At the Court's order, the instant Motions were filed on December 3, 2021,[10] culminating in this Order in which the Court has reached the identical conclusions that the parties received from the OCC months ago.

Against this backdrop, the Court has also recently been advised that despite its clear guidance to the parties that the dates set forth in the operative pretrial schedule were firm, plaintiff to date has taken only two depositions.[11] Inexplicably, and despite its earlier representation to the undersigned that at least 14 witnesses could be deposed irrespective of the outcome of this dispute, plaintiff apparently refused to take any depositions in December and January in anticipation of the Court's issuance of this Order. Doc. No. 354-1 at 10. The parties proceed at this leisurely pace at their own risk. As the Court has repeatedly cautioned, the parties' lack of diligence will not be considered good cause to extend any deadline in the current Scheduling Order.

To ensure that the parties' respective reviews of the Withheld Documents proceeds without delay, the Court will hold a telephonic Status Conference with counsel in three

---

[9] Indeed, the OCC commented on the untimeliness of the submitted privilege dispute and the burden it imposed on the Agency. Doc. No. 299 at 4 n.2.

[10] These two Motions were swiftly followed by two additional discovery motions relating to five other discrete discovery disputes (*see* Doc. Nos. 308, 315) and a full-day discovery conference to address disputes concerning 24 discovery requests (*see* Doc. Nos. 305, 318) which necessitated additional oral argument and a ruling from the bench. *See* Doc. Nos. 327, 339, and 340.

[11] The parties did not state how many depositions defendants have taken.

weeks, at which time the Court will hear from the parties regarding their respective reviews of the Withheld Documents and their progress in completing depositions.

# ORDER

For the foregoing reasons, the Court **ORDERS** as follows:

1. Plaintiff's Motion to Compel the production of nonprivileged factual information from the Withheld Documents [**Factual Information Motion, Doc. No. 300**] is **GRANTED**. Defendants must review the Withheld Documents and identify any such nonprivileged factual information that can be separated from the privileged information and produced to plaintiff, with redactions in compliance with the scope of this Order. Documents containing such information, if any, must be produced to plaintiff on a rolling basis in weekly installments (or, at defendants' option, more frequently) and must be completed *within 30 days of the date of this Order*.

2. Plaintiff's request to override the bank examination privilege and compel the production of the Withheld Documents [**BEP Documents Motion, Doc. No. 301**] is **GRANTED IN PART** and **DENIED IN PART**. The request is granted as to information relating to plaintiff's allegations that defendants deceived the OCC and is denied in all other respects. Defendants must therefore review the Withheld Documents and identify any information related to plaintiff's allegations that defendants deceived the OCC as alleged in paragraphs 73, 75-78, 83-84, 122, 125 and 187 of the Third Amended Complaint. *See* Doc. No. 136. Documents containing such information that have not already been produced to plaintiff as a result of the OCC's identical determination, if any, must be produced to plaintiff on a rolling basis in weekly installments (or, at defendants' option, more frequently) and must be completed *within 30 days of the date of this Order*.

3. Plaintiff must expeditiously review any documents produced pursuant to this Order and must complete their review *within 45 days of the date of this Order*.

4. Counsel for the parties are ordered to appear for a telephonic status conference before the undersigned Magistrate Judge on **March 10, 2022**, at **11:00 a.m**. To participate, counsel must dial 1-877-873-8017 and use access code 2924630. No later than 48 hours before the status conference, the parties shall lodge with the undersigned's chambers (efile_Crawford@casd.uscourts.gov) a Joint Status Report of no more than 6 pages, describing their progress with respect both to the review of the Withheld Documents and the deposition schedule.

5. All deadlines in the Court's November 22, 2021 Amended Scheduling Order [Doc. No. 293] shall remain in effect.

**IT IS SO ORDERED.**

Dated: February 17, 2022

Hon. Karen S. Crawford
United States Magistrate Judge