1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

IN RE:

BofI HOLDING, INC. SECURITIES
LITIGATION.

Case No.:  3:15-CV-02324-GPC-KSC
                  3:15-CV-02486-GPC-KSC


**ORDER:**

**(1) GRANTING MOTION FOR
FINAL APPROVAL OF THE
PROPOSED SETTLEMENT; AND**

**(2) GRANTING FINAL APPROVAL
OF THE NOTICE OF THE
SETTLEMENT; AND**

**(3) GRANTING MOTION FOR
ATTORNEYS' FEES AND
EXPENSES AND CLASS
REPRESENTATIVE SERVICE
AWARD**

**[ECF Nos. 383, 386]**

Before the Court is Plaintiff's unopposed Motion for Final Approval of Class
Action Settlement. ECF No. 386. Defendants filed a Statement of Non-Opposition. ECF
No. 388. Also before the Court is Plaintiff's unopposed Motion for Attorneys' Fees and

Expenses and Class Representative Service Award. ECF No. 383. On October 7, 2022, the Court held a hearing on this matter. ECF No. 389. For the reasons set forth below, the Court **GRANTS** final approval of the Parties' settlement of this class action and **GRANTS** Lead Counsel's request for attorneys' fees and expenses, reimbursement to the Claims Administrator, and the class representative service award.

## I.     BACKGROUND

The factual and procedural background is recounted from the Order granting preliminary approval of class action settlement. ECF No. 378.

### A.     Plaintiffs' Pleadings and Defendants' Challenges

On October 13, 2015, former BofI auditor Charles Matthew Erhart filed a federal whistleblower complaint. *See Erhart v. BofI Holding, Inc.*, No. 3:15-cv-2287-BAS-NLS (S.D. Cal. Oct. 13, 2015), ECF No. 1 ("Erhart Complaint"). As Plaintiff detailed in its Third Amended Complaint, the *New York Times* reported on the Erhart Complaint, and the BofI stock declined by 30% between October 13, 2015 and October 14, 2015— dropping from a closing price of $35.50 to $24.78. ECF No. 136 (Third Amended Complaint ("TAC")) ¶¶ 10, 126. Several BofI investors commenced putative class actions following the filing of the Erhart Complaint. *See* ECF No. 1.

The Court consolidated the actions and appointed Houston Municipal Employees Pension System ("HMEPS" or "Plaintiff") as Lead Plaintiff and Lieff Cabraser Heimann & Bernstein, LLP ("Lead Counsel" or "Counsel") as Lead Counsel for the consolidated class. ECF No. 23. On April 11, 2016, Plaintiff filed a consolidated amended complaint. ECF No. 26.

On May 11, 2016, Defendants moved to dismiss the consolidated amended complaint as to all claims for failure to sufficiently allege falsity and scienter. ECF No. 37. On September 27, 2016, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 64. The Court held that Plaintiff sufficiently pled their Section 10(b) claims against BofI and Garrabrants, (*id* at 15, 23-25), as well as Plaintiff's

Section 20(a) claim against Garrabrants but dismissed Plaintiff's claims with leave to amend as to the other individual defendants, (*id.* at 31-32).

On November 25, 2016, Plaintiff filed a Second Amended Complaint ("SAC"). ECF No. 79. On December 23, 2016, Defendants moved to dismiss the SAC for failure to plead falsity and scienter. ECF No. 88. On May 23, 2017, the Court denied in part and granted in part Defendants' motion. ECF No. 113. The Court upheld Plaintiff's claims of alleged misstatements regarding BofI's loan underwriting practices, internal controls, and compliance infrastructure but concluded that the other misstatements were not actionable. *Id.* at 28-38. The Court upheld Plaintiff's Section 20(a) claims against Defendants Micheletti, Grinberg, Mosich, and Argalas. *Id.* at 38-59. On June 20, 2017, Defendants filed an Answer to the SAC. ECF No. 116. On September 29, 2017, Defendants moved for judgment on the pleadings under Rule 12(c), arguing that Plaintiff failed to sufficiently allege loss causation. ECF No. 123. On December 1, 2017, the Court granted Defendants' motion and dismissed Plaintiff's claims with leave to amend, because Plaintiffs could not demonstrate that the Erhart Complaint or a series of articles published on *Seeking Alpha* properly constituted corrective disclosures for BofI's alleged misstatements. ECF No. 134 at 8-21.

Plaintiffs filed the TAC on December 22, 2017. ECF No. 136. The TAC alleges BofI made material misrepresentations relating to: (1) BofI's internal controls, compliance infrastructure, and risk management; (2) the Bank's underwriting standards and loan credit quality; and (3) government and regulatory investigations. *Id.* On January 19, 2018, Defendants filed a motion to dismiss, arguing again that Plaintiffs failed to sufficiently allege loss causation. ECF No. 144. On March 21, 2018, the Court granted Defendants' motion, dismissed the action with prejudice, and entered judgment against Plaintiffs. ECF Nos. 156, 157.

### B.    Plaintiff's Ninth Circuit Appeal

Plaintiff appealed the Court's dismissal and entry of judgment to the Ninth Circuit. ECF No. 158. The Ninth Circuit reversed and remanded in part. *See In re BofI Holding,*

*Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020). The Ninth Circuit held that Plaintiff "had adequately pleaded a viable claim under § 10(b) and Rule 10b-5 for the two categories of misstatements that the district court found actionable, with the Erhart lawsuit serving as a potential corrective disclosure." *Id.* at 798. The Court found the Erhart Complaint "disclosed facts that, if true, rendered false BofI's prior statements about its underwriting standards, internal controls, and compliance infrastructure." *Id.* at 793. The Ninth Circuit affirmed the Court's finding that the *Seeking Alpha* articles did not qualify as corrective disclosures, and that Plaintiff failed to allege the falsity of alleged misstatements regarding government and/or regulatory investigations. *Id.* at 794-98. The Ninth Circuit denied Defendants' petition for rehearing and petition for rehearing en banc. *In re BofI Holding, Inc. Sec. Litig.*, No. 18-55415 (9th Cir. Nov. 16, 2020), ECF No. 43. Defendants filed a petition for a writ of certiorari to the United States Supreme Court which was denied on October 4, 2021. *BofI Holding, Inc. v. Houston Mun. Emps. Pension Sys.*, 142 S. Ct. 71 (2021).

### C.    Remand and Discovery

Following the Ninth Circuit's remand to this Court, the Court directed the Parties to begin discovery. ECF No. 170. Beginning in December 2020, the Parties exchanged "voluminous discovery and vigorously litigated a substantial number of issues." ECF No. 370-1, Pl.'s Mot., at 10. The discovery exchanged included written discovery and deposition testimony. *Id.* at 11. During discovery, "the parties sought the Court's assistance in resolving at least seventy-seven discrete discovery disputes." *Id.* at 11. And on a few occasions, the parties sought review of Magistrate Judge Crawford's discovery rulings from this Court. *See e.g.*, ECF Nos. 183, 214.

### D.    Class Certification

On May 28, 2021, Plaintiff moved to certify a class of investors. ECF No. 205. Defendants opposed the motion, arguing primarily that Plaintiff failed to satisfy the predominance requirement under Rule 23(b)(3). ECF No. 211. On August 20, 2021, the Court held a hearing on the motion. ECF No. 245. On August 24, 2021, the Court issued

an Order granting Plaintiff's motion for class certification. ECF No. 247. The Order certified a Class consisting of "all persons and entities that, during the period from September 4, 2013 through October 13, 2015, inclusive, purchased or otherwise acquired shares of the publicly traded common stock of BofI, as well as purchasers of BofI call options and sellers of BofI put options, and were damaged thereby." ECF No. 247 at 3, 21.  The Court also appointed HMEPS as Class Representative, and Lieff Cabraser as Class Counsel. *Id.* at 21. The Court approved Plaintiff's proposed notice plan and directed notice to the Class on December 2, 2021. ECF No. 234. The notice period concluded on March 21, 2022. ECF No. 368 (Segura Decl.) ¶¶ 17-18. Class Counsel received only nine requests for exclusion, only one of which was a timely request. *Id.* ¶ 18.

### E.    Mediation and Settlement

In late 2021, the Parties retained the Honorable Daniel Weinstein (Ret.) of JAMS to explore settlement. ECF No. 370-2 (Benson Decl.) at 8. On January 13, 2022, the parties held a mediation session with Judge Weinstein over Zoom, attended by representatives from HMEPS, Defendants, Defendants' insurers, and counsel for all parties. *Id.* The parties communicated through Judge Weinstein thereafter about potential resolution of the action. *Id.*

On February 23, 2022, the Parties reached an agreement in principle to settle all claims in the matter. *Id.* The Parties notified the Court of the settlement, (ECF No. 365), and the Court issued an order vacating all deadlines, scheduling orders, and motion hearings in the action, (ECF No. 366). On February 28, 2022, the parties signed a Term Sheet "reflecting the material terms of the agreement," which was modified on March 7, 2022. ECF No. 370-1, Pl.'s Mot., at 14. On April 13, 2022, the parties executed the Stipulation and Agreement of Settlement. *Id.*

### F.    Settlement Terms

The Settlement Agreement provides for a Settlement Amount of $14,100,000 to a common Settlement Fund on behalf of the already-certified Class. ECF No. 370-3

("Settlement Agreement") at 13. The Settlement Agreement provides that the total Settlement Amount will be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Fee and Expense Award awarded by the Court. *Id.* at 17. No portion of the $14.1 million Settlement Fund will revert to Defendants. ECF No. 370-1, Pl.'s Mot., at 14. After the deduction of notice-related costs and Court-approved award of attorney's fees, reimbursement of litigation expenses, and service award to HMEPS as Class Representative, the Settlement Fund will be distributed on a pro rata basis to all Class Members. *Id.* at 15.

The Settlement Agreement releases:

> [A]ny and all claims, demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Action, could have been asserted in any forum, whether known or Unknown claims, whether foreign or domestic, whether arising under federal, state, local common, statutory, governmental, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class, individual, direct, derivative, representative, on behalf of others in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, whether brought directly or indirectly against any of the Released Defendant Parties that Lead Plaintiff, any member of the Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such (i) asserted in the Action, or (ii) could have asserted in any court or forum that arise out of, are based upon, or relate in any way to any of the allegations, acts, transactions, facts events, matters, occurrences, representations, or omissions involved, set forth, alleged, or referred to, in the Action, or which could have been alleged in the Action, and that relate in any way, directly or indirectly, to the purchase, sale, acquisition, disposition, or holding of any BofI securities during the class Period. Released claims does not include (i) claims to enforce the Settlement; or (ii) any claims of any person or entity that has or will submit a request for exclusion.

ECF No. 370-3 at 11. Released Claims also include "Unknown Claims," (*id.*), as defined by the Settlement Agreement in Section 1.35, (ECF No. 370-3 at 13). Most importantly, the Unknown Claims include that the "Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and

benefits of California Civil Code § 1542," along with "any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542." ECF No. 370-3 at 14.

The Amended Notice discloses material information to a Class Member's decision whether to accept, object to, or opt out of the Settlement, including: (1) the terms and provisions of the Settlement Agreement, including the Settlement Amount; (2) the history of this litigation; (3) the relief to the Class Members and releases to Defendants and Defendants' Releasees that the Settlement will provide; (4) the maximum award of attorney's fees and reimbursement of reasonable expenses to Class Counsel as well as the service award to Class Representative; (5) the date, time, and place (to be decided by the Court) of the hearing on Final Approval of class action settlement; and (6) the procedures and deadlines for opting out of the settlement or submitting comments or objections. *See generally* ECF No. 379-1.

## II.    DISCUSSION

### A.    Legal Standard

Class actions may be settled upon the court's approval. Fed. R. Civ. P. 23(e). Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Any fairness determination requires the Court to "focus[] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members— strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012). Further, where as here, the proposed settlement resolves the claims in a security class action, the Private Securities Litigation Reform Act

("PSLRA") imposes distinct requirements for the form and content of the notice directed to the proposed settlement class. 15 U.S.C. § 78u-4(a)(7).

### B.     Final Approval of Class Action Settlement

Final approval of class action settlement is made in the context of a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In Re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). To approve a proposed class action settlement, the Court must determine that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically, Rule 23(e)(2) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

For the reasons that follow, the Court finds that the Settlement Agreement reached by the Parties is fair, reasonable, and adequate, and **GRANTS** final approval of the class action settlement.

### 1.   Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The adequacy inquiry is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively."  4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

3:15-CV-2324-GPC-MSB

Here, Plaintiff and Class Counsel assert they have more than adequately represented the Class, because they have "exhaustively litigated this case since their appointment in January 2016." ECF No. 386-1 at 12. As laid out in the factual and procedural background above, Plaintiff and Class Counsel have litigated this case through several iterations of the Complaint, numerous motions to dismiss, an appeal to the Ninth Circuit, remand, and discovery before arriving at a settlement agreement in February 2022. Further, the Court previously found that Rule 23(a)(4) and Rule 23(g) were satisfied in certifying the Class, and appointing Lead Plaintiff as Class Representative and Lieff Cabraser as Class Counsel. ECF No. 247 at 7. Lead Plaintiff and Class Counsel have adequately represented Class Members throughout this litigation. Thus, this factor weighs in favor of approving the class action settlement.

### 2. Arm's Length Negotiation

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This inquiry involves an evaluation of "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), 2018 adv. comm. note.

Here, Plaintiffs assert the settlement was reached after negotiations "facilitated by an experienced mediator [Hon. Daniel Weinstein (Ret.)] after the exchange of sufficient discovery to allow the parties to ascertain Defendant[s'] potential exposure." ECF No. 386-1 at 13-14 (quoting *Loreto v. Gen. Dynamics Info. Tech., Inc.*, 2022 WL 3013029, at *5 (S.D. Cal. Feb. 2, 2022)). The presence of a third-party neutral as well as Counsel's own endorsement of the Settlement, (ECF No. 386-1 at 14), weigh in favor of approval. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (stating "the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation" is awarded great weight in final approval of class action settlement).

Lead Counsel also states that "none of the usual hallmarks of collusion" that might indicate bad faith negotiations are present. ECF No. 386-1 at 14 (citing *In re Bluetooth*

9

*Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). Specifically, the Settlement Fund is "non-reversionary," which means no portion of the fund will be returned to Defendants. *Id.* The Court therefore concludes that this factor is satisfied.

### 3. Adequacy of Relief Provided to the Class

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement. *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

The Parties have agreed to settle this case for $14,100,000. ECF No. 370-3 (Settlement Agreement) at 13. Plaintiff's expert estimates recoverable damages in this action range from $135.3 to $158.5 million. ECF No. 370-4 (Feinstein Decl.) at 8. As a percentage of estimated damages, the Settlement Amount represents recovery of between 8.9% and 10.4% of damages. ECF No. 386-1 at 14-15. This is above the median percentage of the recovery for investor losses in securities class action settlements. *See id.* at 15 (citing Laarni T. Bulan & Laura E. Simmons, CORNERSTONE RSCH., *Securities Class Action Settlements—2021 Review and Analysis* 6 (2022), Securities Class Action Settlements—2021 Review and Analysis (cornerstone.com) (finding between 2012 and 2020 the median recovery in securities class actions was 4.9% where estimated damages were from $75 to $149 million and 4% where estimated damages were from $150 to $249 million)). After deducting attorneys' fees and expenses, notice and administration costs, and the class representative service award, Lead Counsel estimates that recovery will be "approximately $2.84 per affected share of BofI Common Stock, and $27.14 per

affected contract of BofI Call Options and BofI Put Options (or $0.27 per affected share)." *Id.* The Court agrees that this is substantial and adequate relief, for the reasons further discussed below.

### a. Costs, risks, and delay of trial and appeal

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Courts must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). The Court therefore must examine, based on the facts of the case, whether the Settlement Agreement will adequately compensate the class given the costs, risks, and delay of trial and appeal.

Here, Plaintiffs state that, were the case to proceed to summary judgment or trial, Defendants would challenge many elements of their claims, including: (1) loss causation; (2) falsity; and (3) price impact. ECF No. 386-1 at 17. Plaintiffs argue that if "Defendants [were] to prevail on some or all of these issues, the Class's recovery would be substantially reduced or disappear entirely." *Id.* Plaintiff adds, "it is well-recognized that securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win." *Id.* (citing *in re Extreme Networks*, 2019 WL 3290770, at *8 (internal quotations omitted). This is clearly true in this action, which has been pending for over six years. Were this action to go forward, Plaintiff would face substantial future risk as they litigated discovery disputes, defended motions for summary judgment, went to trial, and argued against subsequent appeals to the Ninth Circuit.

Accordingly, although the settlement amount is only a portion of Defendant's maximum potential exposure, the Settlement relief appropriately accounts for the not insubstantial risk that Plaintiff and the class would recover nothing on some or all claims were this action to go forward. *Cf. Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS

AC, 2021 WL 1122390, at *4–5 (E.D. Cal. Mar. 24, 2021) (finding that existence of potential defenses weighs in favor of finding reasonable the proposed settlement amount of approximately 22.37% of maximum possible recovery). Additionally, proceeding beyond this stage would bring additional costs and delay to both Parties. The Court therefore concludes that the costs and risks of proceeding with this litigation weigh in favor of finding the Settlement adequate.

### b. Effectiveness of proposed method of distributing relief

The Court must evaluate "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Plaintiff's plan for distributing relief to and allocating the Settlement Amount among Settlement Class Members is detailed in the Amended Notice, (ECF No. 379-1), and Proof of Claim Form, (ECF No. 370-3 at 79). Class Members were previously ascertained using an electronic list of people who purchased, acquired, and/or sold BofI Holding common stock, call options, or put options during the Class Period, a process that was described when Plaintiff moved for approval of the Short-Form, Long-Form, and Summary Notices of Pendency of Class Action. ECF No. 324.

Plaintiff describes the process for distributing settlement funds. ECF No. 386-1 at 17-18. Each Class Member will be required to submit a Claim Form, which will be reviewed by the Claims Administrator. A valid and timely form will include information relating to the shares and options each Class Member purchased or sold during and shortly after the Class Period. The Claims Administrator will review a Claim Form to determine its validity. ECF No. 370-5 at 4-5. If a Claim Form is deficient, the Claims Administrator will send a deficiency letter to the claimant describing the defect, and where applicable, how the defect may be cured. *Id.* at 4. After the Claims Administrator has determined which claims are valid, they will calculate each claim's Recognized Loss, and determine the pro rata distribution based on the Net Settlement Fund available for distribution. *Id.* at 5. Payments will be sent to Class Members via both checks in the mail and wire transfers with a specified period for the claimant to cash their payment. *Id.* at 5.

1   For checks not cashed, the Claims Administrator will "conduct an outreach campaign to
2   encourage cashing and providing claimants with reissued checks where applicable." *Id.*
3   Based on the Claims Administrator's experience, they expect the full Net Settlement
4   Fund to be exhausted by eligible claimants and do not expect there will need to be a
5   process for redistribution of excess funds. *See id.* at 5. The Court finds that the method of
6   allocating and distributing relief is simple and effective, and not "unduly demanding"
7   under Rule 23(e), and weighs in favor of approving the settlement.

### c.  The Attorneys' Fee Award

9          Class Counsel seeks $3,525,000, or 25%, of the total Settlement Amount. ECF No.
10  386-1 at 19. Based on the reasoning discussed in Part D below, the Court finds that the
11  attorneys' fees are reasonable.

### d.  Side Agreements

13         Rule 23(e)(3) requires that the Parties "must file a statement identifying any
14  agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3).
15  Plaintiff states the only separate, non-disclosed agreement between the Parties "relate[s]
16  to the threshold of opt-outs necessary to trigger Defendants' right to terminate the
17  Settlement." ECF No. 386-1 at 19 (noting that "such threshold was not met in this case").
18  This type of provision is known as a "blow-up" provision and is common in securities
19  class actions. *See Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263, at *9 (S.D. Cal.
20  Sept. 26, 2022). Because the threshold for Defendants' ability to opt-out is not triggered
21  in this action and because the exact number of shares that trigger Defendants' opt-out
22  right does not alter what relief the class members receive, the Court finds the non-
23  disclosure of the threshold of the "blow-up" clause does not invalidate the Settlement
24  Agreement.

### e.  Reaction of the Class

26         The reaction of the class also supports finding the settlement is adequate. The
27  Claims Administrator mailed or emailed 44,093 Notice Packets to potential class
28  members, published the Notice in *Investor's Business Daily*, transmitted the Notice via

3:15-CV-2324-GPC-MSB

press release over *PR Newswire*, and maintained a website with information on the settlement. *See generally* ECF No. 386-2 (Decl. of Luiggy Segura ("JND Decl.")).

The deadline for exclusion was August 8, 2022. JND Decl. ¶ 13. The Claims Administrator reports that as of September 7, 2022, they had received two timely requests for exclusion from the class in connection with the Settlement Notice mailing, but that these exclusion requests are invalid because they "do not contain any transaction data during the Class Period." *Id.* ¶ 14; ECF No. 386-2 Exhibit D. As to the Class Notice mailing, the Claims Administrator received nine requests for exclusion, only one of which constituted a "timely valid" request. JND Decl. ¶ 15; ECF No. 368 Exhibit C-1 (valid exclusion request), Exhibit C-2 (invalid exclusion requests). The other eight of these nine exclusion requests were invalid because they also "did not contain any transaction data during the Class Period." JND Decl. ¶ 15. The Court agrees with the Parties that to constitute a valid exclusion, the request must include information showing transaction data that occurred during the class period (September 4, 2013 to October 13, 2015), and this was made clear in the Notice provided to class members. Thus, the Court finds only one valid exclusion from the class was filed.

The Court does not find that any objections were made to the Settlement. Because only one valid exclusion request was made and no objections to the settlement were made, the Court finds that the reaction of the class supports finding the relief provided to class members is adequate.

### 4. Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class

members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated.").

### a. Equity among class members

In the Amended Notice, Plaintiff provides an estimate of the average recovery per share. The Notice informs Class Members that "[i]f all eligible Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses, service award, and costs as described herein) would be approximately $2.84 per affected share of BofI Common Stock, and $27.14 per affected contract of BofI Call Options and BofI Put Options (or $0.27 per affected share)." ECF No. 379-1 at 3. The Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the information submitted in the Proof of Claim Form and based on the calculation of recognized loss, distributed on a pro rata basis. The Court finds no indication that the distribution and allocation methods proposed by Class Counsel and the Settlement Administrator will result in unequitable treatment of Class Members.

### b. Equity between unnamed members and class representative

The Court must also consider whether any proposed service payment to a lead plaintiff is equitable. Additional payments to class representatives or named plaintiffs generally do not render a settlement inequitable because such payments reflect that these plaintiffs have contributed efforts to benefit the class while bearing the risk of nonrecovery and retaliation. *See Staton*, 327 F.3d at 977.  However, courts have refused to countenance settlements that provide for excessively high incentive awards or that give only *de minimis* relief to the rest of the class. *See id.* at 948, 978 (finding settlement inequitable where class representatives and other "active participants" were to receive up

15

to $50,000 in incentive awards each and collectively receive more than half of the total monetary award despite representing less than 2% of the class).

Here, Plaintiff requests a service award for Lead Plaintiff in the amount of $15,000. ECF No. 383-1 at 16-18. Plaintiff's Counsel states that the Lead Plaintiff "expended 'significant time and effort on the litigation and face[d] the risk of retaliation [and] other personal risks . . . .'" ECF No. 383-1 at 22 (quoting *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020)). After six years of litigation, the Court finds that a $15,000 service award is reasonable and does not raise any concerns about the equitable treatment of Class Members in this action. The $15,000 service award constitutes only .1% of the total $14,100,000 recovery. *See Mandalevy*, 2022 WL 4474263, at *11 (finding that an award representing .27% of the total settlement amount was lower than other awards and thus permissible). For these reasons, the Court determines the Settlement Agreement treats all class members equitably.

### C.    Notice to the Class

Before the final approval hearing, the Court is required to direct adequate notice of the settlement be provided to all class members. Federal Rule of Civil Procedure 23 provides:

> The Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort . . . . The notice must clearly and concisely state in plain, easily understood language:
> > (i)     The nature of the action;
> > (ii)    The definition of the class certified;
> > (iii)   The class claims, issues, or defenses;
> > (iv)    That a class member may enter an appearance through an attorney if the member so desires;
> > (v)     That the court will exclude from the class any member who requests exclusion;
> > (vi)    The time and manner for requesting exclusion; and
> > (vii)   The binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

JND Legal Administration ("JND") was appointed as Claims Administrator. ECF No. 386-1 at 5-6. JND states that it sent or caused to be sent 44,093 Notice Packets to potential class members via mail or email. ECF No. 386-1 at 10. 1,192 were returned as undeliverable, and JND was able to update addresses for 971 of these. *Id.* JND also published the Summary Notice in *Investor's Business Daily* and transmitted the Notice via press release over *PR Newswire*. *Id.* Further, JND established a website, (www.BofISecuritiesLitigation.com), with information about the case; copies of Plaintiff's Motions for preliminary approval, attorneys' fees, and final approval; answers to frequently asked questions; and copies of important documents. *Id.* at 10-11. JND reports that as of September 7, 2022, 1,764 unique visitors had viewed the website. *Id.* at 11.

The Amended Notice provided class members with all necessary information to make a decision about whether to remain in the class. The Notice and Summary Notice "'clearly and concisely state in plain, easily understood language' the nature of the action, the class definition, the Class Members' right to exclude themselves from the Class, and how Class Members may address the Court at the Final Approval Hearing." *Id.* at 22 (quoting Fed. R. Civ. P. 23(c)(2)(B)). Class members have until November 7, 2022 to make claims, and as of September 7, 2022, JND had received 290 claims. *Id.* The Court thus finds that the Amended Notice satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

### D. Plaintiffs' Motion for Attorneys' Fees, Administration Costs, and Service Award

Lead Counsel has also filed a Motion for Attorneys' Fees and Expenses and Service Award. ECF No. 383. Included in its Motion for Final Approval of Class Action Settlement, Lead Counsel has also asked the Court to reimburse the Claims Administrator $127,551.72 for expenses incurred as of September 30, 2022, and to continue to reimburse the Administrator for expenses incurred up to $350,000. *See e.g.*, ECF No. 386-1 at 21-22. For the reasons below, the Court approves (1) attorneys' fees in the

1   amount of $3,525,000 and expenses calculated at $1,258,225.85; (2) payment to the

2   Claims Administrator for costs incurred as of September 30, 2022 in the amount of

3   $127,551.72; and (3) a service award of $15,000 to Lead Plaintiff, HMEPS.

### 1.   Attorneys' Fees and Expenses

5   Lead Counsel seeks attorneys' fees totaling $3,525,000 and reimbursement of

6   litigation expenses in the amount of $1,258,225.85. ECF No. 383-1 at 7. "While

7   attorneys' fees and costs may be awarded in a certified class action where so authorized

8   by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent

9   obligation to ensure that the award, like the settlement itself, is reasonable, even if the

10  parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

11  Although attorneys' fees in class actions can be calculated by the "lodestar

12  method" or the "percentage-of-the-fund method," the percentage-of-the-fund method is

13  most common and is expressly contemplated by the PSLRA. *See Mandalevy*, 2022 WL

14  4474263, at *13. As such, the Court will authorize use of the percentage-of-the-fund

15  method.

16  Lead Counsel notes that $3,525,000 in attorneys' fees is equivalent to 25% of the

17  $14,100,000 Settlement Fund. ECF No. 383-1 at 7.  The Ninth Circuit has accepted 25%

18  as a benchmark percentage in calculating attorneys' fees. *In re Online DVD-Rental*

19  *Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). Still, courts are instructed to use the

20  following factors as guidance to determine if a requested fee is reasonable: (1) the result

21  achieved; (2) the risk of litigation; (3) the skill required and quality of counsel's work; (4)

22  the contingent nature of the fee and financial burden; (5) awards made in similar cases;

23  (6) the reaction of the class; and (7) a lodestar cross check. *See Mandalevy*, 2022 WL

24  4474263, at *13 (citing *In re Omnivision Techs., Inc.*, F. Supp. 2d 1036, 1046 (N.D. Cal.

25  2008); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).

26  The Court finds all of these factors weigh in favor of approving the requested fee.

27  Many of these factors were discussed above and the Court will only briefly consider them

28  here. First, class counsel achieved an excellent result for the class. The $14,100,000

recovery amount represents 8.9% to 10.4% of the total estimated damages. ECF No. 383-1 at 9. As discussed, this amount is above the median percentage of recovery in securities class actions with comparable estimated damages. Second, securities class actions present inherent risks and are difficult to prosecute in light of the PSLRA. Many challenges must be overcome to win a securities class action, and indeed this action was no exception.

Third, it is clear Lead Counsel tirelessly litigated on behalf of the class. Lead Counsel drafted voluminous complaints, defeated two motions to dismiss, won on appeal before the Ninth Circuit, and successfully opposed a petition for writ of certiorari to the Supreme Court. *Id.* at 11-12. Lead Counsel handled tremendous amounts of discovery, certified a class, and engaged in mediation which culminated in a settlement. *Id.* at 13. Further, counsel incurred litigation expenses in the amount of $1,258,225.85. Recovery of these expenses and any earned attorneys' fees was entirely contingent on a successful outcome. This is a "substantial outlay," and thus supports the requested fee.

Next, the request of 25% from the Settlement amount is common in securities class actions and is recognized as the benchmark amount by the Ninth Circuit. *See Mandalevy*, 2022 WL 4474263, at *13 (citing cases in which courts in the Ninth Circuit have awarded up to 33% of the common fund).

The reaction of the class also supports finding that the $3,525,000 fee is reasonable. No class member objected to the terms of the settlement or request for attorneys' fees, and only one valid exclusion from the class was made.

Last, a lodestar cross-check confirms the fee should be awarded. Courts calculate lodestar by multiplying reasonable hourly rates by the number of hours worked. Lead Counsel states that 26,755.2 hours were spent working this case. ECF No. 383-1 at 18. Hourly rates range from $385 for paralegals up to $1,150 for partners. *Id.* at 19. Counsel calculates the total value of work expended at $14,073,537.50. *Id.* at 20. This is a lodestar multiplier of .25 and is below the multiplier range of one to four that is often accepted by courts in this Circuit. *See Vizcaino*, 290 F.3d at 1052-54 (finding that multipliers from one to four were used in 80% of class actions surveyed). Thus, the Court finds all factors

support a finding that attorneys' fees in the amount of the $3,525,000, or 25% of the common fund, is reasonable.

As to the requested expenses, "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. Oct. 8, 2014) (quoting *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23). Counsel provides a Declaration summarizing all expenses. ECF No. 383-2 (Chiplock Decl.) ¶¶ 29-32, Exhibit 4. The Court finds that these expenses were reasonably incurred, and that Counsel did not have incentive to accrue unnecessary expenses due to the contingent nature of recovery in this action. Thus, the Court finds an award of $1,258,225.85 for litigation expenses is reasonable.

### 2.  Administration Costs

Pursuant to the Court's directive, Counsel submitted an updated figure by email for all claims administration expenses incurred as of September 30, 2022. Counsel seeks $127,551.72 for the Claims Administrator for all notice and administration costs incurred. No class member objects to this payment. Thus, the Court approves payment to the Claims Administrator for all costs incurred to date.

Counsel estimates that total cost to notify the class and administer the Settlement will not exceed $350,000. ECF No. 386-1 at 23. Counsel asks the court to "authorize Plaintiff to approve additional disbursements to JND, up to a maximum of $350,000, for future expenses it actually incurs in connection with Settlement and claims administration." *Id.* Counsel provides no support that such discretion on behalf of Lead Counsel without Court approval is appropriate. The Court finds that this discretion is not warranted, and instead will require the Claims Administrator to first obtain approval from this Court before any further expenses are distributed. *See In re Forest Lab'ys, Inc. Sec. Litig.*, 2009 WL 10738220, at *10 (S.D.N.Y. May 15, 2009) (stating that Claims Administrator must submit expenses that will be reviewed by the Court). The Court will

order $350,000 to be set aside for future Claims Administrator reimbursement claims approved by the Court.

### 3. Service Award

For the reasons already discussed, the Court finds the $15,000 service award to HMEPS is fair and reasonable.

## III. CONCLUSION

Based on the above, it is hereby ORDERED:

1. **Jurisdiction.** The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Settling Parties and each of the Class Members.

2. **Incorporation of Settlement Documents**. This Judgment incorporates and makes a part hereof: (a) the Stipulation of Settlement dated April 13, 2022; and (b) the Notice and the Summary Notice, both of which were filed with the Court on April 15, 2022.

3. **Notice.** The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Class Counsel's Fee and Expense Award; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Class Counsel's request for a Fee and Expense Award; (v) their right to exclude themselves from or opt back in to the Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private

3:15-CV-2324-GPC-MSB

Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules.

4. **Final Settlement Approval and Dismissal of Claims.** Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Class. The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

5. **Dismissal with Prejudice.** The Action and all of the claims asserted against Defendants in the Action by Lead Plaintiff and the Class are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

6. **Binding Effect.** The terms of the Stipulation and of this Judgment shall be forever binding on Defendants, Lead Plaintiff and the Class (regardless of whether or not any individual Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. L. S. Mitchell is excluded from the Settlement pursuant to request and is not bound by the terms of the Stipulation or this Judgment. ECF No. 368 at 17-23.

7. **Releases.** The Releases set forth in paragraphs 1.25 and 1.27 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

a. Without further action by anyone, and subject to paragraph 8 below, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Class Members, on behalf of themselves, and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees,

employees, attorneys, heirs, executors, and administrators in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Claim against Defendants, shall be permanently and forever enjoined from instituting, commencing or prosecuting, in any capacity, any and all of the Released Claims against any of the Defendants, and shall be deemed to permanently covenant to refrain from instituting, commencing or prosecuting, in any capacity, any and all of the Released Claims against any of the Defendants.  This Release shall not apply to L. S. Mitchell.

b.      Without further action by anyone, and subject to paragraph 8 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, attorneys, heirs, executors, and administrators in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Lead Plaintiff and the Class, and shall forever be barred and enjoined from prosecuting any or all of Released Defendants' Claims against any of Lead Plaintiff and the Class. This Release shall not apply to L. S. Mitchell.

8.      Notwithstanding paragraphs 7(a) - (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

9.      **Rule 11 Findings.**  The Court finds and concludes that the Lead Plaintiff and Defendants and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

10.     **Plan of Allocation Approval.**  The Court finds and concludes that the formula for the calculation of the claims of Claimants as set forth in the Plan of

Allocation submitted by Class Counsel, as described in the Notice and in accordance with the Stipulation, is fair, reasonable and adequate. Any further orders or proceedings solely regarding the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall be considered separate and apart from this Judgment and shall not operate to terminate the Settlement or in any way disturb or affect this Judgment, the finality of this Judgment, or the release of the Released Claims. Any orders regarding the Plan of Allocation shall not affect or delay the Effective Date of the Settlement.

11.  **No Admissions.**  None of the Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

a.  shall be offered against any of the Defendants as evidence of, or construed as, or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants with respect to the truth of any allegation, factual or otherwise, by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants or in any way referred to for any other reason as against any of the Defendants, in any civil, criminal or administrative action or proceeding. The foregoing provisions of this paragraph notwithstanding, the fact of entry into this Stipulation may be introduced in such proceedings to the minimum extent necessary to effectuate the Settlement;

b.  shall be offered against Lead Plaintiff or the Class, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by Lead Plaintiff or the Class that any of its claims are without merit, that any of the

Defendants had meritorious defenses, or that damages recoverable in the Action would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against Lead Plaintiff or the Class, in any civil, criminal or administrative action or proceeding. The foregoing provisions of this paragraph notwithstanding, the fact of entry into this Stipulation may be introduced in such proceedings to the minimum extent necessary to effectuate this Settlement; or

    c. shall be construed against any of the Releasing Plaintiff Parties or Releasing Defendant Parties as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; provided, however, that the Releasing Plaintiff Parties, Releasing Defendant Parties, and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

   12. **Retention of Jurisdiction.** Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for Fee and Expense Award by Class Counsel to be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Class Members for all matters relating to the Action.

   13. **Modification of the Agreement of Settlement.** Without further approval from the Court, the Lead Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Class Members in connection with the Settlement.  Without further order of the Court, Lead Plaintiff and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

3:15-CV-2324-GPC-MSB

14.   **Class Counsel's Attorney Fees and Expenses.**  The Court hereby awards Class Counsel attorneys' fees in the amount of 25% of the Settlement Fund ($3,525,000) and expenses in an amount of $1,258,225.85, together with the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid.  The Court finds that the amount of fees awarded is fair and reasonable in light of the time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Class.

15.   **Post-Distribution Accounting.** Within 21 days after the distribution of the settlement funds and payment of the attorneys' fees, the parties should file a Post-Distribution Accounting, which provides the following information:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

Also within 21 days after the distribution of the settlement funds and award of attorneys' fees, the parties should post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

16.   **Lead Plaintiff's Service Award Related to Representation of the Class.** The Court hereby awards $15,000 to Lead Plaintiff, reflecting reasonable costs and expenses, including Lead Plaintiff's time, related to its representation of the Class.

17.   Class Counsel's Fee and Expense Award, and interest earned thereon, as well as any award to Lead Plaintiff, shall be paid to Class Counsel (or to Lead Plaintiff as described in the previous paragraph) from the Settlement Fund immediately upon award

by this Court.  Any awards of attorneys' fees and expenses, as well as any costs or expenses awarded pursuant to the previous paragraph, shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.  Under no circumstances shall Defendants be responsible to pay any portion of the Fee and Expense Award.

18.     **Termination of Settlement.**  If the Settlement is terminated as provided in the Stipulation or confidential Supplemental Agreement, or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiff, the other Class Members, and Defendants, and the Parties shall revert to their respective positions in the Action as of February 28, 2022, as provided in the Stipulation.

19.     **Entry of Final Judgment.**  There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

20.     **Entry of Final Judgment in Consolidated Case**. Consolidated case, *Hazan v. BofI Holding, Inc. et al.*, No. 3:15-cv-02486-GPC-KSC, is hereby resolved, and the Clerk of the Court is directed to administratively close this case.

        **IT IS SO ORDERED.**

Dated:  October 13, 2022

_____
Hon. Gonzalo P. Curiel
United States District Judge

3:15-CV-2324-GPC-MSB